STATE OF CONNECTICUT *v.* JAMES WEST
(12088)

SPEZIALE, C. J., PETERS, HEALEY, PARSKEY and SHEA, Js.

Argued January 17—decision released March 20, 1984

---

*James J. Ruane,* assistant public defender, with whom, on the brief, were *Richard T. Meehan, Sr.,* and *Richard T. Meehan, Jr.,* for the appellant (defendant).

*Frederick W. Fawcett,* assistant state's attorney, with whom, on the brief, was *Donald A. Browne,* state's attorney, for the appellee (state).

PETERS, J. The question presented by this appeal is whether a photograph, obtained in connection with an arrest which is subsequently nolled, comes within the erasure statute, General Statutes § 54-142a, so that the photograph may not be used for an out-of-court photographic identification of a criminal defendant in an unrelated case. The defendant, James West, was charged by information with the sale of a controlled substance, cocaine, in violation of General Statutes § 19-480 (a).[1] The jury returned a verdict of guilty, and the trial court rendered judgment in accordance with the verdict. The defendant appeals from the judgment of conviction.

The jury might reasonably have found the following facts: On the morning of November 8, 1979, an undercover officer went to the defendant's apartment and

---

[1] General Statutes § 19-480 (a) (now § 21a-277) provides: "PENALTY FOR ILLEGAL MANUFACTURE, DISTRIBUTION, SALE, PRESCRIPTION, DISPENSING. (a) Any person who manufactures, distributes, sells, prescribes, dispenses, compounds, transports with the intent to sell or dispense, possesses with the intent to sell or dispense, offers, gives or administers to another person any controlled substance which is a hallucinogenic substance, other than marihuana, or a narcotic substance except as authorized in this chapter, for a first offense, shall be imprisoned not more than fifteen years and may be fined not more than three thousand dollars or be both fined and imprisoned and for each subsequent offense, shall be imprisoned not more than thirty years and may be fined not more than five thousand dollars, or be both fined and imprisoned."

purchased from him a small amount of cocaine for $25.00. The entire transaction took approximately five minutes, during which time the defendant never left the officer's sight. The officer was the only witness to the sale. She had seen the defendant once before for three to five minutes during a similar transaction between the defendant and an informant. Immediately after her purchase, the officer recorded a detailed description of the defendant.

Approximately six and one-half months later, on May 21, 1980, the undercover officer identified a photograph of the defendant from a six-member photographic array constructed by another officer. She selected the defendant's photograph from the array without any hesitation.

At the defendant's trial, which took place on January 17, 18, 19, and 20, 1983, the undercover officer made an in-court identification of the defendant. The only issue at trial was whether the officer had accurately identified the defendant as the person from whom she had purchased the cocaine. The defendant presented an alibi defense.

Prior to trial, the defendant moved to suppress the identifications, claiming that the photographic identification violated General Statutes § 54-142a, which governs the erasure of criminal records, and that the in-court identification was the fruit of the illegal photographic identification. After conducting a hearing on the motion to suppress, the trial court found that the state had obtained the photograph of the defendant, which formed the basis of the out-of-court identification in this case, in connection with a prior unrelated arrest of the defendant on February 12, 1979. The February charges were nolled, and, pursuant to General Statutes § 54-142a (c),[2] the records of those

[2] General Statutes (Rev. to 1981) § 54-142a (c) provides as follows: "(c) Whenever any charge in a criminal case has been nolled in the supe-

charges were "erased" on April 15, 1980. Although the trial court agreed with the defendant's claim that the inclusion of the "erased" photograph in the May 21, 1980 array violated the erasure statute, the court denied the motion to suppress the photographic identification. The court reasoned that the defendant had presented no evidence that the statutory violation was intentional, and that, under those circumstances, suppression of the reliable identification could serve no deterrent purpose. The trial court also denied the motion to suppress the in-court identification, holding that it met constitutional standards of reliability. The court found specifically that the in-court identification was independent of the earlier photographic identification.

On appeal the defendant contends that the trial court erred in denying his motion to suppress both identifications and in admitting the erased photograph as a full exhibit. Because we hold that the inclusion of the photograph in the identification array did not violate the erasure statute, we find no error.

rior court, or in the court of common pleas, if at least thirteen months have elapsed since such nolle, all police and court records and records of the state's or prosecuting attorney or the prosecuting grand juror pertaining to such charge shall be erased, provided in cases of nolles entered in the superior court, court of common pleas, circuit court, municipal court or by a justice of the peace prior to April 1, 1972, such records shall be deemed erased by operation of law and the clerk or the person charged with the retention and control of such records shall not disclose to anyone their existence or any information pertaining to any charge so erased; provided nothing in this section shall prohibit the arrested person or any one of his heirs from filing a petition to the appropriate court or to the office of the chief court administrator, as the case may be, to have such records physically erased, in which case such records shall be erased. Whenever any charge in a criminal case has been continued in the superior court or the court of common pleas, and a period of thirteen months has elapsed since the granting of such continuance during which period there has been no prosecution or other disposition of the matter, the charge shall be construed to have been nolled as of the date of termination of such thirteen-month period and such erasure may thereafter be effected or a petition filed therefor, as the case may be, as provided in this subsection for nolled cases."

General Statutes § 54-142a provides for the sealing, erasure and, in certain cases, destruction of police, court and prosecutorial records insofar as they pertain to criminal charges that do not result in conviction or for which the defendant has been pardoned. The defendant bases his claim on General Statutes § 54-142a (c),[3] which provides in part: "Whenever any charge in a criminal case has been nolled . . . if at least thirteen months have elapsed since such nolle, all police and court records of the state's or prosecuting attorney or the prosecuting grand juror pertaining to such charge shall be erased . . . and the clerk or person charged with the retention and control of such records shall not disclose to anyone their existence or any information pertaining to any charge so erased . . . ." Section 54-142a (e)[4] further provides that the clerk or other custodian of erased records must adopt appropriate security procedures to safeguard against unauthorized release of erased records and that "[a]ny person who shall have been the subject of such an erasure shall be deemed to have never been arrested within the meaning of the general statutes with respect to the proceedings so erased and may so swear under oath."

---

[3] See footnote 2, supra, for the full text of General Statutes § 54-142a (c).

[4] General Statutes § 54-142a (e) provides as follows: "(e) The clerk of the court or any person charged with retention and control of such records in the office of the chief court administrator or any law enforcement agency having information contained in such erased records shall not disclose to anyone information pertaining to any charge erased under any provision of this section and such clerk or person charged with the retention and control of such records shall forward a notice of such erasure to any law enforcement agency to which he knows information concerning the arrest has been disseminated and such disseminated information shall be erased from the records of such law enforcement agency. Such clerk or such person, as the case may be, shall seal all court records and place them in locked files maintained for this purpose; or upon the request of the accused cause the actual physical destruction of such records. No fee shall be charged in any court with respect to any petition under this section. Any person who shall have been the subject of such an erasure shall be deemed to have never been arrested within the meaning of the general statutes with respect to the proceedings so erased and may so swear under oath."

The defendant contends that the photograph that was taken as part of the routine processing of his arrest on February 12, 1979, was a police record pertaining to that arrest, and was erased with the rest of that file on April 15, 1980. Because erased records "shall not [be] disclose[d] to anyone"; §§ 54-142a (c), (e); the defendant asserts that the disclosure of his "mugshot" to the undercover officer violated the erasure statute. He claims further that the sanction for such a violation must be the suppression of any resulting identification. Anything less, according to the defendant, would frustrate the purpose of the erasure statute, which is to protect individuals who are arrested but not convicted from the adverse effects of an arrest record. We do not agree with the defendant's construction of the statute.

In our construction of the erasure statute, we must consider the requirements of any other statute that regulates the disposition of data acquired by the police in the ordinary course of a criminal proceeding. Under General Statutes § 29-15,[5] a person whose arrest has not led to a conviction has the right to have returned to him identifying data such as fingerprints and pictures, if he had no prior criminal record. The defendant, who has a prior conviction, concedes that he has no claim for return of the photograph at issue in this

[5] "[General Statutes] Sec. 29-15. RETURN OF FINGERPRINTS, PICTURES AND DESCRIPTIONS. (a) On or after October 1, 1974, when any person, having no record of prior criminal conviction, whose fingerprints and pictures are so filed has been found not guilty of the offense charged, or has had such charge dismissed or nolled, his fingerprints, pictures and description and other identification data and all copies and duplicates thereof, shall, be returned to him not later than sixty days after the finding of not guilty or after such dismissal or in the case of a nolle within sixty days after thirteen months of such nolle.

"(b) Any person having no record of prior criminal conviction whose fingerprints and pictures are so filed, who has been found not guilty of the offense charged or has had such charge dismissed or nolled prior to October 1, 1974, may, upon application to the person charged with the retention

case. We must decide, as a matter of first impression, whether the erasure statute, § 54-142a, requires the suppression of a photograph which § 29-15 permits the police to retain. We hold that it does not.

We start with the familiar assumption that the legislature, in enacting § 54-142a, was cognizant of existing statutes such as § 29-15, and intended to create a harmonious and consistent body of law. *Vartuli* v. *Sotire,* 192 Conn. 353, 362, 472 A.2d 336 (1984); *City Council* v. *Hall,* 180 Conn. 243, 251, 429 A.2d 481 (1980); *Engle* v. *Personnel Appeal Board,* 175 Conn. 127, 130, 394 A.2d 731 (1978). We must, if possible, read the two statutes together and construe each to leave room for the meaningful operation of the other.

The legislative history of §§ 29-15 and 54-142a supports the general presumption that the two statutes were not meant to conflict. Although the history of § 54-142a does not explicitly indicate whether the legislature intended to make identification data subject to erasure, it does indicate that the legislature was aware of the relationship between §§ 29-15 and 54-142a, and did not intend the latter statute to repeal the former by implication. Both statutes have been reenacted repeatedly since 1949 with revisions not pertinent to the present conflict, and the legislature has once amended both statutes in a single Public Act. Public Acts 1974, No. 74-163. By that enactment, the legisla-

and control of such identification data at the state police bureau of identification, have his fingerprints, pictures and description and other identification data and all copies and duplicates thereof, returned to him not later than sixty days after the filing of such application provided in the case of a nolle, such nolle shall have occurred thirteen months prior to filing of such application."

This statute differs from § 54-142a in a number of ways not relevant to the present litigation. For example, § 29-15 provides a sixty day period for the return of identification data which, in the case of nolled charges, adds a further period to the thirteen months whose passage triggers the erasure provisions of § 54-142a. A pardon gives no right to return of identification data but does give rise to a right to erasure.

ture amended § 29-15 to provide that identification data relating to nolled charges would be returnable within sixty days after thirteen months of the nolle, rather than within sixty days of the nolle. The stated purpose of this amendment was to conform the nolle provisions of § 29-15 to those of § 54-142a (c). See 17 H. R. Proc., Pt. 6, 1974 Sess., p. 3050.

We can reconcile the ambit of the two statutes without in any way retreating from our prior cases interpreting § 54-142a. Where § 54-142a applies, we held in *Doe* v. *Manson*, 183 Conn. 183, 185, 438 A.2d 859 (1981), that "[e]rasure involves sealing the files and segregating them from materials which have not been erased and protecting them from disclosure, except that disclosure is permitted in a few, very limited circumstances described in the statutes." The fact that erasure requires nondisclosure, even to law enforcement personnel for law enforcement purposes, does not itself establish the conditions under which the statute mandates erasure. In *Doe* v. *Manson*, we concluded (p. 188) that the "court records" which were to be erased after the defendant had received an absolute pardon included a mittimus and a presentence investigation report, but not other records compiled by the department of corrections in the course of the defendant's incarceration. We did not determine what was encompassed by § 54-142a's reference to police records, which are also subject to erasure, nor did we consider whether such records include the identification data whose return is regulated by § 29-15.

Similarly, *Lechner* v. *Holmberg,* 165 Conn. 152, 328 A.2d 701 (1973), did not present any question concerning identification data. There, the issue was whether a criminal defendant, who had been acquitted, had a right to obtain a copy of the transcript of his trial for use in a related civil proceeding. We held that a trial transcript was a court record, which, under the ver-

sion of the statute then in effect, could not be disclosed to *anyone,* including the defendant himself.[6] We rejected the defendant's argument that a transcript was not an erasable court record because such a reading would frustrate the purpose of the erasure law. As we explained, "[t]he obvious purpose of the statute is to protect [an innocent person] from the harmful consequences of a criminal charge of which he is subsequently acquitted. If an investigator, for example, could gain access to a transcript of criminal proceedings, he could certainly draw inferences therefrom and substantially reconstruct the entire criminal record." *Lechner* v. *Holmberg,* supra, 160.

The "police and court records and records of the state's or prosecuting attorney or the prosecuting grand juror" that § 54-142a (c) orders to be erased are records "pertaining to [the] charge" which has been nolled. Unlike transcripts, police reports, charging documents and other records covered by § 54-142a, identification data, as defined by § 29-15, pertain to the subject individual's identity and not to any specific criminal charge. Photographs and fingerprints need not disclose when or where a person was arrested, the nature of or circumstances surrounding the crime charged or the names of witnesses from whom further information may be obtained. The defendant does not claim that the photograph whose suppression he seeks contained any information concerning his arrest.[7] It is only such descriptive information that is subject to the erasure provisions of § 54-142a. We therefore hold that the "fingerprints, pictures and description and other identification data" regulated by § 29-15 are not among the records whose disclosure is governed by

---

[6] The legislature then amended General Statutes § 54-142a by adding the exceptions contained in § 54-142a (f). Public Acts 1974, No. 74-163.

[7] Nor does the defendant claim that there was any constitutional infirmity in the photographic identification.

§ 54-142a. This holding is consistent with the conclusions reached by courts in other jurisdictions. See *People* v. *Anderson,* 97 Misc. 2d 408, 413–14, 411 N.Y.S.2d 830 (1978); *State* v. *Adler,* 16 Wash. App. 459, 464, 558 P.2d 817 (1976).

Our holding that the photograph was not "erased" pursuant to § 54-142a (c) disposes of the defendant's remaining claims. Because the photographic identification was not illegal, the officer's subsequent in-court identification could not have been tainted. The photograph, itself, was also admissible as an exhibit before the jury.

There is no error.

In this opinion the other judges concurred.