THE COMMON FUND *v.* THE TOWN OF FAIRFIELD
(14674)

PETERS, C. J., BORDEN, BERDON, PALMER and F. X. HENNESSY, Js.

Argued December 1, 1993—decision released January 25, 1994

*John F. Fallon,* with whom were *Richard J. Preminger* and *Lawrence P. Weisman,* for the appellant (plaintiff).

*Roy H. Ervin,* with whom, on the brief, was *Roy H. Ervin, Jr.,* for the appellee (defendant).

*George J. Markley* filed a brief for the town of Westport as amicus curiae.

PETERS, C. J. The issue in this property tax appeal is whether a nonprofit corporation that manages investment funds solely for tax exempt schools, colleges and universities is itself eligible for the tax exemption that General Statutes § 12-81 (7)[1] provides for exclusively educational or charitable institutions. The plaintiff, The Common Fund (taxpayer), filed an action in the trial

[1] General Statutes § 12-81 provides in relevant part: "EXEMPTIONS. The following-described property shall be exempt from taxation . . .

"(7) PROPERTY USED FOR SCIENTIFIC, EDUCATIONAL, LITERARY, HISTORICAL OR CHARITABLE PURPOSES. EXCEPTION. Subject to the provisions of sections 12-87 and 12-88, the real property of, or held in trust for, a corporation organized exclusively for scientific, educational, literary, historical or charitable purposes or for two or more such purposes and used exclusively for carrying out one or more of such purposes and the personal property of, or held in trust for, any such corporation, provided (a) any officer, member or employee thereof does not receive or at any future time shall not receive any pecuniary profit from the operations thereof, except reasonable compensation for services in effecting one or more of such purposes or as proper beneficiary of its strictly charitable purposes, and provided (b) in 1965, and quadrennially thereafter, a statement on forms prepared by the secretary of the office of policy and management shall be filed on or before the last day required by law for the filing of assessment returns with the local board of assessors of any town, consolidated town and city or consolidated town and borough, in which any of its property claimed to be exempt is situated. . . ."

court, pursuant to General Statutes § 12-119,[2] to contest the validity of taxes on its real and personal property that it had paid, under protest, to the defendant, the town of Fairfield (town).[3] Both parties filed motions for summary judgment in the trial court. The trial court granted the town's motion and the taxpayer appealed to the Appellate Court. We transferred the appeal to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c) and now affirm the judgment of the trial court.

The facts relevant to this appeal are undisputed. The taxpayer is a New York nonstock corporation that, since 1971, has pooled the endowment or other investment funds of nonprofit private schools, colleges and universities in order to maximize investment returns for the participating educational institutions. The taxpayer has been able to generate enhanced investment income because the size of the total investment pool affords the taxpayer access to professional investment advice at a cost lower than that which would otherwise be charged to each participating educational institution individually. Only educational institutions benefit from the taxpayer's investment activities, and the

[2] General Statutes § 12-119 provides in relevant part: "REMEDY WHEN PROPERTY WRONGFULLY ASSESSED. When it is claimed that a tax has been laid on property not taxable in the town or city in whose tax list such property was set, or that a tax laid on property was computed on an assessment which, under all the circumstances, was manifestly excessive and could not have been arrived at except by disregarding the provisions of the statutes for determining the valuation of such property, the owner thereof or any lessee thereof whose lease has been recorded as provided in section 47-19 and who is bound under the terms of his lease to pay real property taxes, prior to the payment of such tax, may, in addition to the other remedies provided by law, make application for relief to the superior court for the judicial district in which such town or city is situated. . . ."

[3] The taxpayer's suit as originally filed challenged the validity of assessments on the date of October 1, 1988. Subsequent amendments to the pleadings enlarged the taxpayer's challenge to encompass as well the validity of the assessments on the dates of October 1, 1989, October 1, 1990, and October 1, 1991.

educational institutions use their enhanced investment returns exclusively to further their educational purposes. The educational institutions exercise control over the taxpayer's operations by selecting its board of trustees, which in turn, through its committees, monitors investment advice received from professional investment advisors.

The taxpayer has total assets approximating $12 billion. The chief executive officer of the taxpayer earns an annual salary of approximately $500,000, and its top eight executives earn annual salaries totaling $1,200,000.[4] In exchange for its investment advice, the taxpayer charges each of the participating educational institutions an annual fee of $1.80 per $1000 of investment.

In 1985, the taxpayer moved its operations from the state of New York to this state. Its principal office and place of business are now located in the defendant town. In 1988, the taxpayer's real property was assessed for tax purposes at a value of $799,610, and its personal property, consisting primarily of office equipment and computers, was assessed at $280,020. Calculated on the basis of these assessments, the taxpayer's annual tax bill for 1989 was approximately $8500.[5]

---

[4] The parties disagree about whether the salaries paid to the taxpayer's officers meet the requirement of General Statutes § 12-81 (7) (a) that "any officer, member or employee [of the taxpayer seeking an educational or charitable exemption] does not receive or at any future time shall not receive any pecuniary profit from the operations thereof, except reasonable compensation for services in effecting one or more of such purposes or as proper beneficiary of its strictly charitable purposes . . . ." The trial court made no finding on this issue, which has become moot as a result of our disposition of this appeal.

[5] By virtue of amendments to the pleadings, the taxpayer has also challenged its taxability with regard to assessments dated October 1, 1989, October 1, 1990, and October 1, 1991.

By the enactment of § 501 (f) of the Internal Revenue Code (I.R.C.),[6] the Congress has expressly exempted the taxpayer from federal income taxation by providing that it "shall be treated as an organization organized and operated exclusively for charitable purposes." The state of Connecticut has granted the taxpayer's application for a tax exemption permit, so that the taxpayer is not liable for the state sales and use tax.

The trial court concluded that the taxpayer had failed to prove that it is "a charitable institution within the meaning of the exemption statute [§ 12-81 (7)], as one organized and operating exclusively for charitable purposes." Starting from the principle that a tax exemption is an act of legislative grace that must be strictly construed against the taxpayer, the trial court emphasized the significance of two facts: (1) the taxpayer is a corporate entity distinct from the participating educational institutions that it serves; and (2) the taxpayer charges the participating educational institutions a fee for the services that it renders. Accordingly, the trial court rendered judgment for the town.

In its appeal, the taxpayer continues to assert its claim for a property tax exemption under § 12-81 (7).

---

[6] Title 26 of the United States Code, § 501 (f) provides: "COOPERATIVE SERVICE ORGANIZATIONS OF OPERATING EDUCATIONAL ORGANIZATIONS.—

"For purposes of this title, if an organization is—

"(1) organized and operated solely to hold, commingle, and collectively invest and reinvest (including arranging for and supervising the performance by independent contractors of investment services related thereto) in stocks and securities, the moneys contributed thereto by each of the members of such organization, and to collect income therefrom and turn over the entire amount thereof, less expenses, to such members,

"(2) organized and controlled by one or more such members, and

"(3) comprised solely of members that are organizations described in clause (ii) or (iv) of section 170 (b) (1) (A)—

"(A) which are exempt from taxation under subsection (a), or

"(B) the income of which is excluded from taxation under section 115 (a), then such organization shall be treated as an organization organized and operated exclusively for charitable purposes."

It emphasizes that: (1) the sole purpose for the creation of the taxpayer was to facilitate collective investment of the endowment and operating funds of the participating educational institutions; (2) in its constitution and its operations, the taxpayer has adhered to this purpose by limiting participation to educational institutions; and (3) the investment returns generated by the taxpayer, with the exception of a fee charged by the taxpayer, are used exclusively to fulfill the educational purposes of the participating educational institutions. It contends that these undisputed facts require the conclusion that it is entitled to a tax exemption in the same manner as if the participating educational institutions had either created a common trust for the advancement of education or had, without any formal joint association, continued the separate management of their own funds.

Resolution of the taxpayer's claim for a tax exemption depends upon the proper construction of the language of § 12-81 (7). The provision of I.R.C. § 501 (f) that entitles the taxpayer to be treated as a charitable organization applies only "[f]or purposes of *this title*" and does not, therefore, confer an automatic state tax exemption upon the taxpayer. (Emphasis added.) See *Waterbury First Church Housing, Inc.* v. *Brown,* 170 Conn. 556, 558–59, 367 A.2d 1386 (1976). As a matter of state law, the legislature bears the responsibility for establishing a proper balance between two worthy but competing policy goals: the protection of local tax revenues and the advancement of the charitable goals of corporate adjuncts to educational institutions. To ascertain the intention of the legislature with respect to a tax exemption, we employ three overlapping presumptions. "First, statutes that provide exemptions from taxation are a matter of legislative grace that must be strictly construed against the taxpayer. Second, any ambiguity in the statutory formulation of an

exemption must be resolved against the taxpayer. Third, the taxpayer must bear the burden of proving the error in an adverse assessment concerning an exemption." *Plastic Tooling Aids Laboratory, Inc.* v. *Commissioner of Revenue Services,* 213 Conn. 365, 369, 567 A.2d 1218 (1990); *United Illuminating Co.* v. *Groppo,* 220 Conn. 749, 752–53, 601 A.2d 1005 (1992); *United Church of Christ* v. *West Hartford,* 206 Conn. 711, 718–19, 539 A.2d 523 (1988).

Although § 12-81 (7) establishes an exemption from local property taxes for "a corporation organized exclusively for . . . educational . . . or charitable purposes," this section contains no definition of what constitutes such a corporation. We must, therefore, inquire whether related provisions elsewhere in the General Statutes shed light on the scope of the § 12-81 (7) exemption. "Because the legislature is always presumed to have created a harmonious and consistent body of law, the proper construction of any statute must take into account the mandates of related statutes governing the same general subject matter." *Dart & Bogue Co.* v. *Slosberg,* 202 Conn. 566, 575, 522 A.2d 763 (1987); *Felia* v. *Westport,* 214 Conn. 181, 187, 571 A.2d 89 (1990); *State* v. *West,* 192 Conn. 488, 494, 472 A.2d 775 (1984); *Connecticut Light & Power Co.* v. *Costle,* 179 Conn. 415, 422, 426 A.2d 1324 (1980).

For present purposes, a definition of eligibility for exemption from property taxes under § 12-81 (7) may be inferred from the provisions of General Statutes § 12-89a, which sets out the procedures that govern the pursuit of such claims. The section states: "Any organization claiming exemption from property tax in any municipality in which real or personal property belonging to such organization is situated, which exemption is claimed with respect to all or a portion of such property under the provisions of any of the *subdivisions (7),* (8), (10), (11), (12), (13), (14), (15), (16), (18), (27), (29),

(49) or (58) *of section 12-81,* may be required upon request, at any time, by the assessor or board of assessors in such municipality to submit evidence of certification from the Internal Revenue Service, effective at the time of such request and in whatever form is then in use under Internal Revenue Service procedure for purposes of such certification, that such organization has been approved for exemption from federal income tax as an exempt organization *under Section 501 (c) or 501 (d) of the Internal Revenue Code."* (Emphasis added.)

Section 12-89a specifically limits a charitable or educational exemption under § 12-81 (7) to organizations that are exempt under I.R.C. § 501 (c) or (d). The cross reference in § 12-89a to specific subsections of I.R.C. § 501, rather than to I.R.C. § 501 in its entirety, parallels a similar usage found throughout the General Statutes. In numerous other circumstances in which the legislature has granted special exemptions from taxation or regulation to nonprofit organizations, eligibility for the state exemptions has been conditioned, in the first instance, on the nonprofit organizations' federal exemption under I.R.C. § 501 (c). See, e.g., General Statutes §§ 7-185a (b), 12-412 (29), 12-498 (a) (14) and (15), 36-435*l*, and 52-557m.[7] By contrast, our research has uncovered no exemption, anywhere in the General Statutes, that expressly includes this taxpayer, whose federal tax exemption arises not under I.R.C. § 501 (c) but under I.R.C. § 501 (f). The taxpayer therefore does not qualify for an exemption under § 12-81 (7) if the statute is strictly construed.

[7] The taxpayer's sales and use tax exemption follows from chapter 219 of the General Statutes, entitled "Sales and Use Taxes." General Statutes § 12-406 et seq. General Statutes § 12-412 (8) is one example of an exemption for charitable and religious organizations that the legislature chose not to limit to organizations that are exempt under I.R.C. § 501 (c) or (d).

Strict construction of § 12-81 (7) to bar a charitable exemption for the taxpayer is consistent with its special status under federal law. The taxpayer arguably might have been entitled to a state tax exemption so long as it qualified for a federal exemption under I.R.C. § 501 (c) because it provided its investment services "free of charge or substantially free of charge" to the participating educational institutions. I.R.S. letter T:MS:ED:R:3-MLW (Nov. 3, 1970). The taxpayer's decision that, in light of its changing economic circumstances, it needed to charge a fee to cover its management expenses undermined its existing federal charitable status. Congressional enactment of I.R.C. § 501 (f) did not restore the taxpayer's status as a § 501 (c) organization but entitled it, as a matter of federal tax law, to be "treated as an organization organized and operated exclusively for charitable purposes." The taxpayer's current operations, including the charging of fees to the participating educational institutions, therefore qualify it as a charitable organization under federal law only because of the enactment of 26 U.S.C. § 501 (f). See *HCSC-Laundry* v. *United States,* 624 F.2d 428, 436 (3d Cir. 1980), aff'd, 450 U.S. 1, 101 S. Ct. 836, 67 L. Ed. 2d 1 (1981).

In the absence of a special state statute, however, the taxpayer's current fee structure undermines its claim to a charitable exemption as a matter of state law. As a result of its fee collections, the taxpayer is a self-supporting entity. For the purpose of determining eligibility for a property tax exemption, a Connecticut property owner is not "a corporation organized exclusively for . . . charitable purposes"; General Statutes § 12-81 (7); if it is entirely self-supporting. *United Church of Christ* v. *West Hartford,* supra, 719–22; *Waterbury First Church Housing, Inc.* v. *Brown,* supra, 562–65. In accordance with these cases, the validity of which the taxpayer does not challenge,

the taxpayer is not organized "exclusively for . . . charitable purposes" under § 12-81 (7) even though the investment returns generated by its operations redound to the benefit of the participating educational institutions.[8]

The judgment is affirmed.

In this opinion the other justices concurred.

[8] The taxpayer urges that its tax treatment should be analogized to that afforded to the United Way. The record contains no information about the financial relations between the United Way and its beneficiaries, or about the tax status of real or personal property owned by the United Way. In the absence of such a factual record, we are not persuaded that we should assume a functional identity between a corporation that acts as a collecting agency for contributions *to* charitable organizations and a corporation that acts as an investment advisor of pooled investment and endowment funds *for* charitable organizations.