# DOCTOR'S ASSOCIATES, INC. *v.*
# DANIEL KEATING ET AL.
## (AC 21995)

Lavery, C. J., and Spear and Peters, Js.

Argued March 20—officially released September 17, 2002

*Brenden P. Leydon,* for the appellants (defendants).

*Kevin M. Kennedy*, with whom, on the brief, was *Jonathan W. Haray*, for the appellee (plaintiff).

*Opinion*

PETERS, J. This case concerns the authority of the Superior Court to enforce an arbitration clause in a franchise agreement. As part of the arbitration clause, the parties agreed that arbitration would take place in Bridgeport, Connecticut. The franchisor brought four applications in the Superior Court to compel the franchisees to arbitrate. All but one of the franchisees are residents of Florida. The principal question in this case is whether the trial court properly concluded that the selection of Connecticut as the arbitral forum is sufficient to confer on a Connecticut judicial forum personal jurisdiction over the franchisees. The franchisees have appealed from the court's granting of the franchisor's applications for orders requiring the franchisees to proceed with arbitration in Bridgeport. We affirm the judgments of the court.

The plaintiff, Doctor's Associates, Inc., is the franchisor of numerous Subway sandwich shops around the country. It is a Florida corporation that has its principal place of business in Fort Lauderdale. The defendant Daniel Keating is a present or former Subway franchisee in this state. The defendants Ruth Reed, Dennis M. DeSpain, Terry L. DeSpain and Charles Smith III (Florida defendants) are or have been Subway franchisees in Florida.

Having filed a proper demand for arbitration with the American Arbitration Association, the plaintiff sought court orders compelling the defendants to proceed with arbitration. See General Statutes § 52-410; 9 U.S.C. § 2. In accordance with the forum selected in each of the franchise agreements, it asked the court to designate Bridgeport as the venue for the arbitration.[1]

---

[1] At oral argument, the parties agreed that, as a matter of substance, the arbitration must proceed according to federal law as it is set out in the

In response, the defendants filed two motions. The Florida defendants filed motions to dismiss in which they asserted that the court lacked personal jurisdiction over them. All the defendants filed motions for stay in which they urged the trial court to stay its hand because of ongoing proceedings in Illinois.

The trial court denied the motions to dismiss and declined to order a stay. The defendants appeal from the orders directing them to proceed with arbitration. We have examined each of their contentions and find them unpersuasive.

I

We first address the jurisdictional issues raised by the Florida defendants. Pursuant to Practice Book § 10-30, each of these defendants filed a motion to dismiss the plaintiff's complaint for lack of personal jurisdiction over them. "A motion to dismiss admits all facts well pleaded and invokes any record that accompanies the motion, including supporting affidavits that contain undisputed facts. . . . A ruling on a motion to dismiss is neither a ruling on the merits of the action . . . nor a test of whether the complaint states a cause of action. . . . Motions to dismiss are granted solely on jurisdictional grounds." (Citations omitted; internal quotation marks omitted.) *Olson* v. *Accessory Controls & Equipment Corp.*, 54 Conn. App. 506, 515, 735 A.2d 881 (1999), aff'd, 254 Conn. 145, 757 A.2d 14 (2000). The Florida defendants denied having any connections with this state that would warrant the exercise of personal jurisdiction over them. The court denied the motions to dismiss.

---

Federal Arbitration Act, 9 U.S.C. § 1 et seq. See *Doctor's Associates, Inc.* v. *Casarotto*, 517 U.S. 681, 116 S. Ct. 1652, 134 L. Ed. 2d 902 (1996); *Southland Corp.* v. *Keating*, 465 U.S. 1, 104 S. Ct. 852, 79 L. Ed. 2d 1 (1984). They also agree that the issues before us are procedural and thus governed by state law.

On appeal, as at trial, "[i]n ruling upon whether a complaint survives a motion to dismiss, a court must take the facts to be those alleged in the complaint, including those facts necessarily implied from the allegations, construing them in a manner most favorable to the pleader." (Internal quotation marks omitted.) *Lawrence Brunoli, Inc.* v. *Branford*, 247 Conn. 407, 410–11, 722 A.2d 271 (1999); *Tooley* v. *Metro-North Commuter Railroad Co.*, 58 Conn. App. 485, 491, 755 A.2d 270 (2000). It nonetheless is the law that the plaintiff has the burden to prove facts pertaining to personal jurisdiction. *Knipple* v. *Viking Communications, Ltd.*, 236 Conn. 602, 607, 674 A.2d 426 (1996); *Standard Tallow Corp.* v. *Jowdy*, 190 Conn. 48, 53–54, 459 A.2d 503 (1983); *Gaudio* v. *Gaudio*, 23 Conn. App. 287, 298, 580 A.2d 1212, cert. denied, 217 Conn. 803, 584 A.2d 471 (1990).

The court applied these standards in denying the Florida defendants' motions to dismiss. It concluded that, in light of the express terms of the franchise agreement, the plaintiff had established the necessary predicate for personal jurisdiction. In the franchise agreements, each of the Florida defendants had agreed that "[a]ny controversy or claim arising out of or relating to this contract or the breach thereof shall be settled by Arbitration in accordance with the Commercial Arbitration Rules of the American Association at a hearing to be held in Bridgeport, Connecticut . . . ." The defendants also had agreed that Connecticut law would govern the interpretation and applicability of the franchise agreement. The court held that consent to those provisions manifested consent to the jurisdiction of a Connecticut court.

The Florida defendants acknowledge that it is possible to consent to personal jurisdiction in a state in which they do not reside. They maintain that they did not do so. Their principal contention is that, without

an express condition of consent, the forum selection clause is ambiguous and therefore must be construed against the plaintiff, which drafted it. See *Mongillo* v. *Commissioner of Transportation*, 214 Conn. 225, 231, 571 A.2d 112 (1990); *Rund* v. *Melillo*, 63 Conn. App. 216, 222, 772 A.2d 774 (2000). They argue that the court's enforcement of the forum selection clause is unfair to defendants who, as Florida residents, had no reason to expect that a Florida corporation would sue them in Connecticut and force them to incur additional expenses in defending themselves in a foreign forum.[2]

We agree with the trial court and the plaintiff that the defendants' arguments cannot be sustained. We do not understand how an arbitration can be expected to go forward in this state if there is no way to compel both parties to appear in this state. As the United States Court of Appeals for the Second Circuit aptly has held: "To hold otherwise would be to render the arbitration clause a nullity." (Internal quotation marks omitted.) *Doctor's Associates, Inc.* v. *Stuart*, 85 F.3d 975, 979 (2d Cir. 1996). Although a forum selection clause may be ambiguous, this one is not.[3]

Our construction of the arbitration clause finds support in federal and state court cases interpreting language identical to or closely resembling that contained in the franchise agreement that is at issue here. Illustrative cases include *We Care Hair Development* v. *Engen*, 180 F.3d 838 (7th Cir. 1999); *Subway Equipment Leasing Corp.* v. *Forte*, 169 F.3d 324 (5th Cir. 1999); *Doctor's Associates, Inc.* v. *Distajo*, 107 F.3d 126 (2d Cir.), cert. denied, 522 U.S. 948, 118 S. Ct. 365, 139 L. Ed. 2d 284 (1997); *Doctor's Associates, Inc.* v. *Stuart*, supra, 85

---

[2] This contention strikes us as anomalous in light of the action that they themselves initiated in Illinois.

[3] At oral argument, the attorney for the defendants was unable to point to any language in the arbitration clause that was ambiguous.

F.3d 975; *Gilbert* v. *Burnstine*, 255 N.Y. 348, 174 N.E. 706 (1931).

The defendants cite only one case to the contrary. See *Jackson* v. *Kentucky River Mills*, 65 F. Sup. 601 (E.D. Ken. 1946). That case is distinguishable because there the arbitration agreement provided that the parties "consent that the arbitration shall be enforceable under and pursuant to the laws of the State, Country or Government having jurisdiction . . . ." Id., 602. By contrast, the agreement that is before us specifies that Connecticut law, and only Connecticut law, would govern the interpretation and application of the franchise agreement. *Jackson*, therefore, does not assist our resolution of this case.

In light of the unequivocal language of the forum selection clause and the interpretation that this clause has uniformly received in other courts, we conclude that all of the defendants had consented to the exercise of personal jurisdiction in a court in this state. It is not unfair to expect contracting parties to live up to the terms of a franchise agreement to which they agreed.[4] The court resolved this issue properly.

One of the Florida defendants raises a related but different jurisdictional claim. The defendant Terry DeSpain argues that the trial court did not have personal jurisdiction over her because she was not properly served with process. She relies on General Statutes § 52-410 (a), which provides that service be made "in the manner provided by law." She claims that service on her counsel did not suffice.

In its memorandum of decision, the court observed that, on October 4, 2000, DeSpain had been notified of the pending proceedings through her attorney, the

---

[4] The defendants do not claim that the forum selection clause was unconscionable.

attorney presently representing all the defendants. The attorney filed an appearance on her behalf six days later. The court observed that "[the] defendants do not question that notice was given regarding the statutory proceeding to compel arbitration." Only thereafter did the court address the rules governing service of process of an application for enforcement of an arbitration agreement.

The principal focus of the defendants' brief concerning personal jurisdiction over DeSpain is the absence of service on her personally. She discounts the significance of service on her attorney. This argument seems to confuse the necessity of *proper* service, which is undisputed, with the alleged necessity of *personal* service. Pursuant to Practice Book § 10-12 (a), "[w]hen a party is represented by an attorney, the service shall be made upon the attorney . . . ."

In discussing personal service in the reply brief, DeSpain argues, for the first time, that service on her attorney was untimely. She maintains that the issue of timeliness had not been on the table before it was raised by the plaintiff's brief as appellee. That contention overlooks the fact that the trial court expressly stated the dates of service and appearance. If there was a question about timeliness, it could and should have been raised earlier. As has been noted on many occasions, a reply brief is not the proper vehicle for curing an omission in the appellant's brief. See, e.g., *Commissioner of Health Services* v. *Youth Challenge of Greater Hartford, Inc.*, 219 Conn. 657, 659 n.2, 594 A.2d 958 (1991); *Kelley* v. *Tomas*, 66 Conn. App. 146, 163, 783 A.2d 1226 (2001).

## II

At trial, the defendants moved the court for a stay because of pending proceedings that they had initiated in Illinois. The court declined to grant a stay. On appeal, we must decide whether the court abused its discretion

in so doing. The defendants' motion is premised on the hypothesis that an Illinois court would have jurisdiction to enforce an agreement to arbitrate that designates Connecticut as the arbitral forum. That is not so.[5]

The defendants' appendix contains the text of some of the provisions of the Uniform Arbitration Act, which Illinois has codified as 710 Ill. Comp. Stat. 5/1 et seq. The cited provisions describe the validity of arbitration agreements and the rules governing judicial enforcement of such agreements. The defendants seem to have overlooked a subsequent provision in the same act. Section 5/16 provides: "Court, jurisdiction. The term 'court' means any circuit court of this State. The making of an agreement described in Section 1 providing for arbitration *in this State* confers jurisdiction on the court to enforce the agreement under this Act and to enter judgment on an award thereunder." (Emphasis added.)

The defendants argue that we should ignore this statute because the plaintiff first brought it to judicial attention in its oral argument in this court. This argument is disingenuous at best. Having included the text of 710 Ill. Comp. Stat. 5/1 and 5/2 in their appendix, the defendants were on notice of other provisions of the Uniform Arbitration Act.

Looking to related statutes to give guidance to the scope of a particular statute is a common practice in the courts of this state. For example, in *Common Fund* v. *Fairfield*, 228 Conn. 375, 636 A.2d 795 (1994), our Supreme Court considered a corporation's eligibility for a charitable exemption under General Statutes §§ 12-81

---

[5] We note that the Florida Arbitration Act, which does not allow Florida courts to compel arbitration in another state, is to the same effect. See *Acton CATV, Inc.* v. *Wildwood Partners, Ltd.*, 19 Conn. App. 235, 236–37 n.1, 561 A.2d 976 (1989); *Acton CATV, Inc.* v. *Wildwood Partners, Ltd.*, 508 So. 2d 1274, 1275 (Fla. App.), review denied, 518 So. 2d 1273 (Fla. 1987).

(7) and 12-89a. Section 12-89a cites Internal Revenue Code § 501 (c) and (d) of title 26 of the United States Code as establishing the criteria for such an exemption. The court held that the determinative federal statute was § 501 (f). *Common Fund* v. *Fairfield*, supra, 381–83. In support of its holding, the court relied on the principle that, "[b]ecause the legislature is always presumed to have created a harmonious and consistent body of law, the proper construction of any statute must take into account the mandates of related statutes governing the same general subject matter." *Dart & Bogue Co.* v. *Slosberg*, 202 Conn. 566, 575, 522 A.2d 763 (1987); *Felia* v. *Westport*, 214 Conn. 181, 187, 571 A.2d 89 (1990); *State* v. *West*, 192 Conn. 488, 494, 472 A.2d 775 (1984); *Connecticut Light & Power Co.* v. *Costle*, 179 Conn. 415, 422, 426 A.2d 1324 (1980). Illinois courts adhere to the same principle. See, e.g., *Maiter* v. *Chicago Board of Education*, 82 Ill. 2d 373, 389, 415 N.E.2d 1034 (1980), cert. denied, 451 U.S. 921, 101 S. Ct. 2000, 68 L. Ed. 2d 312 (1981); *Chicago School Reform Board of Trustees* v. *Illinois Educational Labor Relations Board*, 309 Ill. App. 3d 88, 94, 721 N.E.2d 676 (1999), appeal denied, 188 Ill. 2d 562, 729 N.E.2d 494 (2000).

In light of the Illinois statute, a stay of Connecticut proceedings would have served no purpose other than delay because Illinois courts could not mandate arbitration in Connecticut. The court's denial of the defendants' motion was not an abuse of its discretion.

The judgments are affirmed.

In this opinion the other judges concurred.