[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The parties to this action are Murray Colton, the plaintiff who was tried three times on charges of murder; and the State of Connecticut; the Commissioner of the Department of Children and Families (Linda D'Ambario); the Department of Children and Families; James Carr, Marguerite Gonzalez, aka Majorie Gonzalez; Deborah Collins, Jeanne Berg; and David Melchonne, the defendants. Though tried, the plaintiff was never convicted.[1] All of his trials occurred before July 22, 1995. On January 31, 1995 Murray Colton, Jr. was born to the plaintiff and his then partner, Diana Murray Colton, aka Raffuse (now deceased). On July 15, 1995, prior to the exhaustion of his final appeal the department of children and families (DCF) issued a notice of immediate removal and a ninety-six-hour hold to the plaintiff. DCF, through its agents, took the child from the plaintiff and placed him in a foster home. The infant's mother, Diane Colton, had tested positive for THC use, following a collapse in a restaurant and prompting an investigation by DCF. DCF then filed a petition to terminate the plaintiff's parental rights regarding the child. Among the stated grounds in the petition, DCF cited the fact that the plaintiff had been charged with first degree murder but was awaiting an appeal.[2]
On July 27, 1995, the court extended the ninety-six-hour hold. On August 4, 1995, the child was placed with his grandparents. On September 7, 1995, the court, McWeeny, J., dismissed DCF's petition to terminate the plaintiff's parental rights.
On January 31, 1997, the plaintiff filed the present case against the state of Connecticut, Linda D'Amario Rossi, James Carr, Marguerite Gonzalez, Deborah Collins, Jeanne Berg and David Melchionne,[3] the defendants. The only remaining count of the third amended complaint, the operative pleading, alleges a declaratory judgment action. Specifically, the plaintiff asks that the court declare that General Statutes §17a-101g is unconstitutional under the United Stated and Connecticut constitutions. Count Two of the operative complaint states: "Section CT Page 233717a-101g of the Connecticut General Statutes is unconstitutional in that it authorized the courts of the State of Connecticut to order the temporary removal of children from the custody of their parents without due process of law, in violation of thefourteenth amendment to the United States Constitution and Article 1, Sections 8 and 10 of the Constitution of the State of Connecticut."
General Statutes § 17a-101g (c) provides in relevant part: "If the Commissioner of Children and Families, or his designee, has probable cause to believe that the child or any other child in the household is in imminent risk of physical harm from his surroundings and that immediate removal from such surroundings is necessary to ensure the child's safety, the commissioner, or his designee, shall authorize any employee of the department or any law enforcement officer to remove the child and any other child similarly situated from such surroundings without the consent of the child's parent or guardian."
Before this court is the defendants' motion for summary judgment and the plaintiff's objection. The defendants filed their motion for summary judgment on June 27, 2002. The plaintiffs filed a Memorandum in Opposition on August 9, 2002. The court heard argument in October 2002.
 ISSUES PRESENTED
The defendants argue that they are entitled to summary judgment for a number of reasons. First, the defendants contend that the plaintiff's claim for declaratory relief is not justiciable. Second, the defendants argue that the claims for declaratory relief are insufficient as a matter of law, in that, the defendants acted, at all times, in accordance with constitutional statutory authority. Third, the defendants assert that the issue raised by the plaintiff — the taking of a minor child without a pre-deprivation hearing — has already been resolved in their favor by the courts. Finally, the defendants maintain that the statutes at issue are all constitutional under the State Constitution.
The plaintiff responds as follows. Colton maintains that he does have a justiciable claim and that he has standing to challenge the pertinent statutes' constitutionality. The plaintiff's main argument, and the ground upon which he asserts that the motion for judgment should be denied, is that the defendants acted pursuant to authorization of an unconstitutional set of statutes.
For reasons more fully set forth in this memorandum the court holds that the claims presented by the plaintiff are justiciable, however, the defendants are entitled to judgment, as a matter of law, because the CT Page 2338 statutory provisions at issue are constitutional.
 LEGAL DISCUSSION
"Practice Book [§ 17-49] provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matte of law . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party." (Internal quotation marks omitted.) Cunha v. Colon, 260 Conn. 15, 18 n. 6,792 A.2d 832 (2002).
 STANDING AND JUSTICIABILITY
The defendants move for judgment first on the ground that the plaintiff lacks standing and therefore his claim is not justiciable. Standing and justiciability go to the court's subject matter jurisdiction.[4]Fairfax Properties, Inc. v. Lyons, 72 Conn. App. 426, 431, 806 A.2d 535
(2002); Sosin v. Scinto, 57 Conn. App. 581, 586, 750 A.2d 478 (2000). Though a motion for summary judgment is not the proper vehicle to raise a lack of subject matter jurisdiction, "[a] possible absence of subject matter jurisdiction must be addressed and decided whenever the issue is raised . . . [W]henever a lack of jurisdiction to entertain a particular proceeding comes to a court's notice, the court can dismiss the proceeding upon its own motion." (Internal quotation marks omitted.) Semrau v.Herrick, 72 Conn. App. 327, 330, 805 A.2d 125 (2002). Because the defendants have submitted no documentation in support of their argument that the court lacks subject matter jurisdiction, the court looks to the third amended complaint to determine the issue of subject matter jurisdiction. See, e.g., Doctor's Associates, Inc. v. Keating,72 Conn. App. 310, 313, 805 A.2d 120 (2002).
The defendants contend that the present case is moot because the plaintiff has not had any contact with DCF in seven years and because once the child was placed in temporary custody, the decision to take the child out of the home for ninety-six hours is not justiciable because the case is moot. "Justiciability requires (1) that there be an actual controversy between or among the parties to the dispute . . . (2) that the interests of the parties be adverse . . . (3) that the matter in controversy be capable of being adjudicated by judicial power . . . and (4) that the determination of the controversy will result in practical relief to the complainant." (Internal quotation marks omitted.) State v. McElveen,261 Conn. 198, 204, 802 A.2d 74 (2002). CT Page 2339
The allegations in the complaint do fit within the definition of mootness. However, the allegations also fit within an exception to the mootness doctrine. "Our cases reveal that for an otherwise moot question to qualify for review under the capable of repetition, yet evading review exception, it must meet three requirements. First, the challenged action, or the effect of the challenged action, by its very nature must be of a limited duration so that there is a strong likelihood that the substantial majority of cases raising a question about its validity will become moot before . . . litigation can be concluded. Second, there must be a reasonable likelihood that the question presented in the pending case will arise again in the future, and that it will affect either the same complaining party or a reasonably identifiable group for whom that party can be said to act as surrogate. Third, the question must have some public importance. Unless all three requirements are met, the [case] must be dismissed as moot." (Internal quotation marks omitted.) Brown v.Brown, 69 Conn. App. 209, 212, 794 A.2d 550 (2002).
In the present action all of these elements are present. The first element is satisfied because the temporary hold only lasts for ninety-six hours. General Statutes § 17a-101g (d).
Given the nature of litigation, it would be impossible to initiate a lawsuit within ninety-six hours and complete that litigation. Also, this issue may arise again and affect a similar group of people, specifically, parents accused of violent crimes. The third element is present as well. In In re Romance M., 229 Conn. 345, 641 A.2d 378 (1994), the Connecticut Supreme Court granted certiorari because of "the ongoing public importance about the events that are relevant to an adjudication of petitions for the termination of parental rights." Id., 358. Though theRomance appeal was dismissed, the decision evidences the public importance of cases challenging the parental termination statutes. Moreover, the present case could determine the rights of parents to their children in the face of interference by the state. Given that importance, the allegations satisfy the third element of the capable of repetition yet evading review test.[5]
The defendants have also asserted that the plaintiff lacks standing to bring this matter. "It is axiomatic that a party must have standing to assert a claim in order for the court to have subject matter jurisdiction over the claim . . . Our standing jurisprudence consistently has embodied the notion that there must be a colorable claim of a direct injury to the plaintiff, in an individual or representative capacity." (Citation omitted; internal quotation marks omitted.) Ganim v. Smith WessonCorp., 258 Conn. 313, 346, 780 A.2d 98 (2001). CT Page 2340
In support of their argument, the defendants cite Monroe v. Horwitch,215 Conn. 469, 576 A.2d 1280 (1990). In Monroe the plaintiff brought an action alleging that the statewide grievance committee had violated complainants' due process and equal protection rights. Id., 470. The court noted that the plaintiff had not filed a grievance against an attorney since 1985.
The defendants claim that this case stands for the proposition that a case must be brought in recent time or a plaintiff will lack standing. This is a misreading of Monroe. In determining that the Monroe plaintiff lacked standing, the court concluded that "the plaintiff has not established a colorable claim of direct injury. She is simply a member of the general public who has not demonstrated how she was harmed in a unique fashion by the present structure and functioning of the statewide grievance process." (Emphasis in original.) Id., 473. In the present case, the plaintiff has pleaded direct injury. He alleges that DCF, through the defendants, violated his due process rights, thus causing him injury. Accordingly, the plaintiff has alleged sufficient facts to establish that he has standing.
 CONSTITUTIONALITY OF THE PERTINENT STATUTES
The defendants' next arguments address the merits of the plaintiff's case. The defendants argue that the constitutionality of the Section 17a-101g, the statute pursuant to which they acted, has already been decided and therefore, they are owed judgment as a matter of law. In this action the plaintiff alleges that § 17a-101g violates the
fourteenth amendment to the United States constitution and article first, §§ 8
and 10 of the constitution of Connecticut.
The Connecticut Supreme Court "has held that the due process clauses of both constitutions have the same meaning." Society for Savings v.Chestnut Estates, Inc., 176 Conn. 563, 569 n. 5, 409 A.2d 1020 (1979). See also Caldor's, Inc. v. Bedding Barn, Inc., 177 Conn. 304, 314,417 A.2d 343 (1979). This tenet of Connecticut constitutional law was thrown into doubt by Ramos v. Vernon, 254 Conn. 799, 834-37, 761 A.2d 705
(2000). The Ramos court, however, specifically declined to overruleSociety for Savings and Caldor's. Id., 837. Accordingly, for the purposes of this motion, the court employs the same analysis for article first, §§ 8 and 10, of the constitution of Connecticut that it employs for the fourteenth amendment to the United States constitution.[6]
The fourteenth amendment to the United States constitution guarantees procedural and substantive due process. However, the court need not consider the plaintiff's procedural due process rights in the present CT Page 2341 case. Although parents have a liberty interest in parenting their child for purposes of procedural due process analysis; Troxel v. Granville,530 U.S. 57, 64, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000); Roth v. Weston,259 Conn. 202, 217, 789 A.2d 431 (2002); the court need not determine whether procedural due process was implicated in the present case because the plaintiff has not sufficiently alleged such a challenge in its prayer for relief. See Practice Book § 17-56(a) (2) ("The prayer for relief [in a declaratory judgment action] shall state with precision the declaratory judgment desired . . . "). Accordingly, the court need only consider the substantive due process rights of the plaintiff.
"Substantive due process rights are rights such as those listed in the Bill of Rights and those rights held to be so fundamental that a state may not take them away." Taylor v. Walker, 818 F.2d 791, 794 (11th Cir. 1987), cert. denied, 489 U.S. 1065, 109 S.Ct. 1337, 103 L.Ed.2d 808
(1989). When challenging the constitutionality of a statute, a party may challenge its constitutionality on its face or challenge it as applied. The plaintiff, however, has failed to allege that the statute is unconstitutional as applied to him. "Typically an `as-applied' challenge is a claim that a statute, by its own terms, infringe[s] constitutional freedoms in the circumstances of [a] particular case." (Internal quotation marks omitted.) Seling v. Young 531 U.S. 250, 271,121 S.Ct. 727, 148 L.Ed.2d 734 (2001) (Thomas, J., concurring); accord,Texas Workers' Compensation Commission v. Garcia,893 S.W.2d 504, 518 n. 16 (Texas 1995). The plaintiff has not alleged any special circumstances nor has he requested in his prayer for relief that the statute be declared unconstitutional as applied to him. Accordingly, the third amended complaint merely alleges a facial substantive due process challenge to § 17a-101g.
The fundamental rights implicated by the alleged facts of the present case were discussed in In re Juvenile Appeal (83-CD), 189 Conn. 276,455 A.2d 1313 (1983). In Juvenile Appeal (83-CD) the Connecticut Supreme Court examined General Statutes § 46b-129 (a) and General Statutes (Rev. to 1989) § 17-38a, both of which allowed the state to take temporary custody of a child against a parent's wishes.[7]
Examining the interests implicated by such statutes, the Connecticut Supreme Court found that "[t]he parent has only one interest, that of family integrity . . . and the state has only one compelling interest, that of protecting minor children . . . The child, however, has two distinct and often contradictory interests. The first is a basic interest in safety; the second is the important interest . . . in having a stable family environment." (Citations omitted.) Id., 287. Though there is a compelling interest, the statute at issue, § 17a-101g, must "be CT Page 2342 narrowly drawn to express only the legitimate state interests at stake." (Internal quotation marks omitted.) Id., 288. The Supreme Court held that § 46b-129 "is constitutional because when it is read together with § 17-38a, as it must be, it is justified by a compelling state interest and is narrowly drawn to express only that legitimate state interest." Id., 293.
This holding is significant. General Statutes (Rev. to 1989) § 17-38a (e) is the predecessor to § 17a-101g. Moreover, the statutory language examined in In re Juvenile Appeal (83-CD) has not changed significantly, even though the statute has been moved and re-numbered to § 17a-101g. Given that the Connecticut Supreme Court has passed upon the language of § 17a-101g and found the predecessor statute, when read together with § 46b-129, to be constitutional, this court makes the same finding.
 CONCLUSION
Though the plaintiff has standing and presents a justiciable claim, he is not entitled to judgment as a matter of law, because the statutes he argues are unconstitutional are, in fact, constitutional. Therefore, this court grants the defendants' motion for summary judgment, because the defendants are entitled to judgment as a matter of law.
Angela Robinson-Thomas, Judge