PETER F. GALLAGHER *vs.* THE NEW YORK & NEW
ENGLAND RAILROAD COMPANY.

Fairfield Co., Oct. T., 1888.   PARK, C. J., CARPENTER, PARDEE, LOOMIS
and BEARDSLEY, Js.

It is provided by Gen. Statutes, § 3505, that every railroad company incor-
porated since the first Wednesday of May, 1850, shall cause sufficient
fences to be erected and maintained on the sides of its road, except at
places where the railroad commissioners shall adjudge them unneces-
sary.   Held that this statute is to receive a reasonable and not a literal
construction.

The track of the defendant's railroad ran for a considerable distance by
the side of another railroad, with a space of fifty feet between them, and
no action had been had by the railroad commissioners excusing the
company from fencing.   Held that the company was not required by
the statute to maintain a fence between its own and the other track.

There was no fence on the outside of the other track and a horse strayed
from a pasture upon it and thence upon the track of the defendant's
road, and was there killed by a passing train; no negligence on the
part of the company being charged beyond the neglect to maintain the
fence.   Held that the company was not liable.

[Argued November 7th, 1888—decided January 11th, 1889.]

ACTION for the killing of a horse of the plaintiff by a rail-
road train of the defendant; brought to the Court of Com-
mon Pleas of Fairfield County.   The defendant suffered a
default and was heard in damages before *Hall, J.*   The
facts were found and substantial damages were awarded, and
the defendant appealed.   The case is fully stated in the
opinion.

*E. D. Robbins,* for the appellant, cited—1 Rorer on Rail-
roads, 622 ; 3 Wood's Railway Law, 1555, 6 ; *Davis* v. *Bur-
lington & Missouri River R. R. Co.,* 26 Iowa, 549, 554 ; *In-
dianapolis & Cincinnati R. R. Co.* v. *Kinney,* 8 Ind., 402,
404 ; *Indianapolis, Peru & Chicago R. R. Co.* v. *Crandall,* 58
id., 365 ; *Swearingen* v. *Missouri, Kansas &c. R. R. Co.,* 64

Misso., 73; *Toledo, Wabash & Western R. R. Co.* v. *Chapin,* 66 Ill., 504.

*H. W. Taylor,* for the appellee, cited—Gen. Statutes, §§ 3505, 3507; 3 Wood's Railway Law, 1558, *et seq.*; *Rockwell* v. *N. York & N. Eng. R. R. Co.,* 51 Conn., 401; *Bronson* v. *Coffin,* 108 Mass., 175; *Wilder* v. *Maine Central R. R. Co.,* 65 Maine, 332; *Tombs* v. *Rochester & Syracuse R. R. Co.,* 18 Barb., 583; *Hurd* v. *Rutland & Burlington R. R. Co.,* 25 Verm., 116; *Tyson* v. *Kansas City & Des Moines R. R. Co.,* 43 Iowa, 207; *Enright* v. *San Francisco & San José R. R. Co.,* 33 Cal., 230.

LOOMIS, J. The plaintiff in this case seeks to recover the value of a horse killed by a locomotive engine on the defendant's railroad track in the town of Brookfield. For a considerable distance at and near the place of the accident the defendant's track and that of the Housatonic Railroad Company lie side by side, with an intervening space of land fifty feet wide. The defendant's track is located on the west side of the Housatonic road and nearly parallel therewith. The defendant had erected and maintained a sufficient fence on its west side, where its road abutted on private fields, but on the other side, between the two railroad tracks, it had erected no fence, and none had been erected by the Housatonic Railroad Company on either side of its track. In September, 1887, the plaintiff had placed his horse in the care of his father, who before the accident had placed it with two other horses to pasture on his home lot, which adjoins the Housatonic Railroad on the east side and is not separated from it by any fence. On the west side is a ditch and the southerly side abutting on land of one Andrews is marshy. There was no fence between Andrews's land and the Housatonic Railroad, and horses could pass either across the ditch directly on to the railroad track or over the marsh on to land of Andrews, and thence on to the track. On the 5th of October, 1887, while the plaintiff's father and his family were at breakfast, the horses passed from the home

lot by one of the routes mentioned, across the track of the Housatonic road on to that of the defendant, where the plaintiff's horse was struck by the defendant's locomotive and killed.

The defendant suffered a default and moved for a hearing in damages, upon which the facts were found by the court below and judgment rendered for the plaintiff to recover full damages. Two questions were made before the trial court which have come to this court for review upon the defendant's appeal, namely :—Do the facts show negligence on the part of the defendant? Do they show contributory negligence on the part of the plaintiff?

In regard to the defendant's negligence there is no allegation in the complaint, nor was it claimed upon the trial that it consisted in mismanaging the train in any respect but it was predicated entirely upon the want of a fence between the two railroads. Upon this part of the case the decisive question is whether it was the duty of the defendant to erect such a fence; and this is a pure question of law, depending upon the true construction of section 3505 of the General Statutes, which is as follows :—" Every railroad company shall erect and maintain fences on the sides of the railroads operated by it at such place or places as the railroad commissioners shall direct, and every railroad company operating any railroad constructed under any act of incorporation passed since the first Wednesday of May, 1850, or hereafter constructed, shall cause sufficient fences to be erected and maintained on the sides of such railroads, except at such place or places as the railroad commissioners shall adjudge them unnecessary, such fences to be erected by all companies hereafter organized within twelve months after they enter upon and take possession of the lands through which their railroads pass." And by section 3507 it is provided that "any person who without neglect on his part shall suffer damage by reason of the neglect of any railroad company to erect or maintain fences as required by law, may recover such damage from such company."

The defendant, having been incorporated since the date

mentioned in the statute, is subject to its provisions, whatever construction must be given to them. It is conceded also that the railroad commissioners have never passed upon the question as to a fence at this place or adjudged the same unnecessary.

As this negates the only exception expressly mentioned in the statute, the defendant railroad is undoubtedly brought within the strict literal terms of the statute. So that the practical question before us is, whether it is the duty of the court to administer and apply the statute according to its letter, or according to its intent and object.

And here one of the approved canons of interpretation comes to our aid, namely, that the letter should not be followed where it leads to absurdity and injustice. Smith's Commentaries on Statute & Constitutional Law, § 486; Dwarris on Statutes, 587; 1 Kent's Commentaries (7th ed.), side page 462.

What then would be the consequences should we interpret the statute in question according to its letter? Every railroad company incorporated since 1850 would, in the absence of any order from the commissioners, be required to fence both sides of its road, though the effect might be to cut off, or render extremely difficult, the ingress or egress of passengers at its stations, or the reception and delivery of freight. The language would even include places where the railroad track intersects public highways or other railroad tracks, or where it passes over rivers or bodies of water.

Such results could not have been within the intent of the legislature. It is therefore our duty to discard a literal and adopt a rational construction. The manifest object of the act was to require fences to be built and maintained against private fields and lots where domestic animals might be feeding or stationed. It could not have been contemplated that animals requiring such protection would be on an adjoining railroad track, and it is obvious that a fence confining them to one track would ordinarily increase rather

than diminish the risk of injury, since it would limit and narrow the facilities for escape from an approaching train.

In cases involving merely the construction of a local statute we do not often resort to other jurisdictions for aid, but the dangers to domestic animals along the line of railways, as well as danger to persons and property being transported over such roads, have induced the legislatures of many states besides our own to pass laws requiring railroad companies to fence their roads, and although we find no statute identical in its provisions with our own, yet we find many cases where the courts have, in construing these statutes, departed as widely perhaps from the letter as we have done in the present case, so that our position may be materially strengthened by reference to decisions in other states on this subject.

In 1 Thompson on Negligence, p. 519, § 24, it is said in reference to such statutes: "It is obvious that there are places along the line of every railroad where it is impossible and improper for the road to be fenced; where, for instance, it is crossed by highways, or runs along a street, or at the depots and stations of the company, necessarily open for access by the public. In some instances these places are specifically excepted from the operation of the statute by its terms. In others the courts have held that such exceptions are necessarily implied from the inconvenience which would follow any other interpretation." See also *Davis* v. *Burlington & Missouri River R. R. Co.*, 26 Iowa, 549; *Indianapolis & Cincinnati R. R. Co.* v. *Kinney*, 8 Ind., 402; *Indianapolis, P. &c. R. R. Co.* v. *Crandall*, 58 Ind., 365; *Toledo, W. & W. R. R. Co.* v. *Chapin*, 66 Ill., 504; *Lloyd* v. *Pacific R. R. Co.*, 49 Mo., 199.

For these reasons we conclude that the defendant was under no duty to fence the road at the place in question, and so the entire foundation upon which the trial court predicated the finding of negligence fails, and the judgment was erroneous.

As this first point is necessarily decisive of the whole case

it renders the next question, whether there was contributory negligence on the part of the plaintiff, immaterial.

There was error in the judgment complained of.

In this opinion the other judges concurred.