[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
Memorandum Filed September 16, 1996
For nearly sixty years, the city of Bridgeport has owned an airport located in the town of Stratford. For nearly fifty years, the two municipalities have been at odds over whether the airport was exempt from taxation by the town of Stratford. For over fourteen years, this lawsuit between the two municipalities over the tax exempt status of the airport has been pending. The issue is governed by General Statutes § 12-74[1] and by the terms of a stipulated judgment and agreement entered into by the parties in 1978 in settlement of a prior lawsuit between them. CT Page 5425
Paragraph 3 of that stipulated judgment and agreement basically tracks § 12-74 and provides: "The City of Bridgeport hereby stipulates and agrees that should said [airport] properties cease to be used for airport purposes or should the Town of Stratford not have the same privileges as to the use of said airport as those possessed by the City of Bridgeport, or that in the event such airport is leased to any persons, association or private corporation, except a governmental agency ordinarily exempt from taxation, or is used in such a manner as to become a source of profit to the City of Bridgeport, or otherwise be subject to taxation by law, then said properties shall be subject to taxation payable to the town of Stratford." Paragraph 18 of the stipulated judgment and agreement provides in pertinent part "that should any of the conditions enumerated in Paragraph 3 be found to have existed during the period 1958 to the present, then the appropriate taxes due for said period applicable shall be paid to the Town of Stratford by the City of Bridgeport." Stratford claims that three conditions enumerated in paragraph three exist and that Bridgeport owes it taxes pursuant to the terms of the stipulated judgment and General Statutes § 12-74.
A stipulated judgment like a stipulation is a contract, and, as such, the construction of that contract is controlled by the parties' intent. Connecticut Bank Trust Co. v. Reckert,33 Conn. App. 702, 706, 638 A.2d 44 (1994); State v. Phidd,42 Conn. App. 17, 29 (1996). "There is no dispute that parties contract with reference to existing law"; Hatch Corporation v.Della Pietra, 195 Conn. 18, 21, 485 A.2d 1285 (1985); and that is clearly the case with the stipulated judgment and agreement here. That is, the parties' intent is obviously grounded in the terms of the statute. For this reason, the court will look to the rules of statutory construction in interpreting the words and phrases on which the parties' claims are based.
The general rule of construction in taxation cases is that provisions granting a tax exemption are to be construed strictly against the party claiming the exemption. Common Fund v.Fairfield, 228 Conn. 375, 380, 636 A.2d 795 (1994). General Statutes § 12-74, however, "`does not grant an exemption in the technical sense. Rather it merely states a rule of nontaxability. Consequently, it does not come within the rule that tax exemption statutes must be construed strictly against the taxpayer.' Arnold College v. Milford, 144 Conn. 206, 210, CT Page 5426128 A.2d 537 (1957); St. Bridget Convent Corp. v. Milford, 87 Conn. 474,478, 88 A. 881 (1913); Yale University v. New Haven,71 Conn. 316, 329-30, 42 A. 87 (1899); accord Hartford Hospital v.Hartford, 160 Conn. 370, 374, 279 A.2d 561 (1971)." LoomisInstitute v. Windsor, 234 Conn. 169, 176, 661 A.2d 1001 (1995) (construing General Statutes § 12-81 (7)). Moreover, as Stratford states in its brief "this is an action based on a claimed breach of the terms and conditions of a Stipulated Judgment between the Town of Stratford and the City of Bridgeport. It is not based on enforcement or exemption under Connecticut General Statutes § 12-74 . . ." For this reason, the burden rested on the plaintiff to prove the necessary elements of its case by a fair preponderance of evidence. NewEngland Fruit Produce Co. v. Hines, 97 Conn. 225, 230,116 A. 243 (1922); see generally Nikitiuk v. Pishtey, 153 Conn. 545,552-53, 219 A.2d 225 (1966).
Stratford's first and principal claim is that the airport is "a source of profit to the City of Bridgeport." Although there was evidence that the revenues of the airport may exceed its expenses for certain years, any such surplus is eventually allocated or invested back into the airport in the form of capital improvements or otherwise. The phrase "source of profit to the City is not defined by § 12-74 or by the 1978 stipulated judgment and agreement. Like much of the language, its meaning depends on the context in which it is used. George E.Warren Co. v. United States, 76 F. Sup. 587, 591 (D.Mass. 1948) (profit); In re Marriage of Stephenson, 162 Cal.App.3d 1057,209 Cal.Rptr. 383, 398 (1984) (same). In the context of statutory tax exemptions, the phrase has long been understood to have a different meaning in the governmental sense than in the private, business sense. See Brunswick School v. Greenwich,88 Conn. 241. 244, 90 A. 801 (1914); Yale University v. New Havensupra, 71 Conn. 316. Stratford apparently claims now, as it did over forty years ago, that the term "profit" means "surplus." It is this construction that was rejected by the Supreme Court in 1955 when in resolving earlier litigation between these parties, the Court observed that "[t]he construction which the defendant [Stratford] urges upon us would lead to possible bizarre results. If, for example, operations at the airport for 1951 had revealed a profit of one dollar, the defendant would have the plaintiff lose its exemption from taxation and pay to the defendant a tax of $42,772.94: Stated somewhat differently. the making of an insignificant profit of $1 would compel the plaintiff to pay the staggering tax of almost $43,000. The very statement of this CT Page 5427 possibility reveals the weakness of the defendant's position. It is to be presumed that the General Assembly did not intend to work an absurd consequence. Gallagher v. New York N.E.R Co.,57 Conn. 442, 445, 18 A. 786 [1889]. When a statute is ambiguous in terms and fairly susceptible to two constructions, one of which will avoid an absurd or ridiculous consequence, a court is warranted in assuming that the legislative intent was to attain a rational and sensible result. Sage-Allen Co. v. Wheeler,119 Conn. 667. 679, 179 A. 195 [1935]: United States v. Bryan,339 U.S. 323. 338, 70 S.Ct. 724, 94 L.Ed. 884 [1950]. The loss of the tax exemption will not occur merely because a nice calculation by this or that method of accounting discloses a profit from operations for the year. The exemption will become unavailable if, considering all the circumstances, it is obvious that the airport is being operated for the purpose of making money for the city of Bridgeport. The airport cannot be used under a plan to add revenue to the plaintiff's general treasury without suffering the consequence of losing the tax exemption." (Footnote omitted.)Bridgeport v. Stratford, 142 Conn. 634, 643-44, 116 A.2d 508
(1955)[2] Here, the evidence persuades the court that Bridgeport has not operated the airport in such a manner as to add revenue to its general fund.
Second, Stratford claims that it does "not have the same privileges as to the use of said airport as those possessed by the City of Bridgeport . . ." For this, Stratford relies singularly on a provision of the Bridgeport Code which, prior to 1989, limited employment by the City of Bridgeport to City residents. There is no evidence that this provision had ever been enforced,[3] let alone enforced at the airport, or that any Stratford resident had been denied employment at the airport because of his place of residence. The court rejects this claim.[4]
Finally, Stratford claims that the airport has lost its nontaxable status because airport property is being leased by Bridgeport to third persons. While it is true that portions of the airport may be or have been leased to others, two rules of statutory construction persuade this court that Stratford's claim lacks merit. First, "[t]he intent of a statute is to be sought first in the language used, and if that is unambiguous we need not resort to other aids of interpretation. Mad River Co. v.Wolcott, 137 Conn. 680, 686, 81 A.2d 119 [1951] The words used are to be construed according to their commonly approved usage. General Statutes § 1-1 . . ." Klapproth v. Turner, 156 Conn. 276, CT Page 5428 280, 240 A.2d 886 (1968). Both the statute and the stipulated judgment and agreement state that if "such airport is leased to any persons, association or private corporation, except a governmental agency ordinarily exempt from taxation" that the tax exemption is lost. (Emphasis added.)[5] The clear import of this provision is that the tax exemption is lost only if the "airport" is leased as a whole or predominantly, and not merely a small constituent part. While "[w]ords importing the singular number may extend and be applied to several persons or things, and words importing the plural number may include the singular"; General Statutes § 1-1(f); no rule of construction authorizes the court to dissect the entity embodied by a word, here "airport," into segments. This literal reading of the statute is confirmed by the absence in the statute or in the stipulated judgment of any provision for prorating taxes as to that part of the airport which is not leased and the absurdity of prohibiting the leasing of any portion of the airport to anybody. Secondly, "under the maxim of `noscitur a sociis,' the meaning of a particular word or phrase in a statute is ascertained by reference to those words or phrases with which it is associated."Staples v. Palten, 214 Conn. 195, 199, 571 A.2d 97 (1990). General Statutes § 12-74 provides, inter alia, that "[a]ll property owned by any town or city, which is located in another town and used for the purposes of an airport, shall be exempt from taxation so long as it continues to be used for such purposes . . . but, if any such airport is leased to any person, association or private corporation, or is used in such manner as to become a source of profit to the municipality owning the same, the land so occupied and situated in any adjoining town or towns shall thereupon be subject to taxation." The provision for the loss of the tax exemption by leasing is informed by the requirements (1) that the property by used for the purposes of an airport and (2) that it not become a source of profit to the municipality. It would be utterly inconsistent with this context to have the nontaxable status of the airport forfeited because a small portion of the airport was leased, where the airport is still predominantly occupied by Bridgeport for use as an airport and is not a source of revenue for its general fund.
Judgment shall enter for the defendant.
LEVIN, J.