## STATE OF CONNECTICUT *v.* RICHARD B. WEBER

Superior Court, Geographical Area No. 14 at Hartford
File No. CR-02-564924

Memorandum filed December 2, 2004

*Brian J. Leslie*, assistant state's attorney, for the state.

*Michael Kogut*, for the defendant.

KELLER, J. These petitions arise out of a dismissed criminal action prosecuted by the office of the chief state's attorney's medicaid fraud control unit against

Richard B. Weber, a physician. On December 22, 2003, the state's attorney entered a nolle prosequi on a charge of larceny in the first degree pursuant to General Statutes § 53a-122 (a) (4), and the court, on Weber's motion, dismissed the criminal action pursuant to General Statutes § 54-56b.

On August 30, 2004, the state, pursuant to General Statutes § 54-142a (f), requested that the court enter an order authorizing disclosure of Weber's erased police and court records and any records of any state's attorney in the criminal case. The reason for the state's request is that Weber filed a claim dated April 29, 2004, in the office of the claims commissioner against the state, alleging, inter alia, false arrest and malicious prosecution. The state, by and through the office of the attorney general, represented that the requested records were needed to defend the state against the civil claim. On October 8, 2004, the court ordered the records sought by the state preserved from destruction and ordered them disclosed to the assistant attorney general or his duly authorized representative.[1] Weber, as a former criminal defendant, is deemed, by filing his claim with the claims commission, to have waived, to a limited extent, the nondisclosure provision of § 54-142a (f) as well as the provision of General Statutes § 54-142 (e) that would otherwise permit him to have his arrest records destroyed. The fundamental purpose of the statute is served by permitting limited disclosure of the records to counsel for the state for it to take reasonable steps to defend against Weber's threatened

---

[1] "[F]or purposes of § 54-142a, '[e]rasure alone does not mean the physical destruction of the documents.'" *Doe* v. *Manson*, 183 Conn. 183, 185, 438 A.2d 859 (1981), cited in *Ruggiero* v. *Fuessenich*, 237 Conn. 339, 348, 676 A.2d 1367 (1996). Weber has not sought physical destruction of the records, and it is unlikely that he will make such a request during the pendency of any civil action.

action while sealing and segregating the records to prevent disclosure to anyone else. *State* v. *Anonymous*, 237 Conn. 501, 517, 680 A.2d 956 (1996).

Prior to the state's request for disclosure of the erased records, the office of the chief state's attorney had not responded to Weber's request that "the complete original file of any state's attorney and Inspector involved in the investigation and prosecution" of Weber be delivered to his counsel. Weber had sent this request to deputy chief state's attorney Paul E. Murray in correspondence dated July 2 and August 16, 2004. On October 13, 2004, Weber therefore petitioned this court for disclosure of all erased records in the possession of the office of the chief state's attorney to his duly authorized attorney for inspection and copying. The state, represented by the office of the attorney general, objects to Weber's petition, claiming that full disclosure of all the records in the possession of the office of the chief state's attorney violates the attorney work-product privilege and invades the privacy of an assistant state's attorney's personnel records. The state also claims that some documents do not pertain to the charge.

Weber claims that the language of § 54-142a (e), which specifically states in pertinent part that "any law enforcement agency having information contained in such erased records shall not disclose to anyone, *except the subject of the record*, upon submission . . . of satisfactory proof of the subject's identity," guarantees the subject of the erased criminal record, the former criminal defendant, full and unfettered access to the files in the possession of the office of the chief state's attorney. (Emphasis added.)

To facilitate a decision on Weber's petition, this court ordered the state to make all records available for inspection and copying to Weber except such records it claimed were privileged or otherwise nondisclosable.

The court further ordered the state to file with this court, under seal, for an in camera inspection, the items it claims were nondisclosable as well as to submit a privilege log identifying each item and the specific reasons for its claimed nondisclosability. The state complied with these orders on October 22, 2004.[2]

The erasure statute permits disclosure of erased criminal records, including records in the possession of any state's attorney, to the defendant regarding information pertaining to any charge erased. Courts have held, however, that the statute, § 54-142a (subsections [a] and [e]), does not authorize disclosure of privileged material or material otherwise nondisclosable. See *Martin* v. *Grievance Committee*, Superior Court, judicial district of Middlesex, Docket No. CV-02-0097910 (June 21, 2002) (*Parker, J.*) (records not pertaining to charge and personnel records held not disclosable); *Chasen* v. *Blue Cross & Blue Shield*, Superior Court, judicial district of Ansonia-Milford, Docket No. CV-91-0380655 (December 22, 1993) (*Curran, J.*) (work product of state's attorney held not disclosable). In *State* v. *West*, 192 Conn. 488, 494, 472 A.2d 775 (1984), which involved a motion for suppression of an identification made from a photograph of the defendant obtained from a previously dismissed criminal action, our Supreme Court cautioned that in interpreting § 54-142a, the subject erasure statute, courts must be cognizant of other law and construe both so as to "leave room for the meaningful operation of the other."

In *West*, the court held that identification data regulated by General Statutes § 29-15 are not among records

[2] The state suggests that the court leave the discovery of these erased criminal documents to the decision of the claims commissioner, who may, pursuant to General Statutes § 4-151 (b) and (c), issue discovery orders. Needless to say, this is a tempting proposal; however, § 54-142a (f) only permits a court to order disclosure. Nothing the court decides here, however, precludes or limits the commissioner from determining which, if any, of these materials, he will consider in those proceedings.

whose disclosure is governed by § 54-142a. Thus, the police may retain and utilize such items after a dismissal. The court rationalized that an identification photograph pertains to the subject individual's identity and not to any specific criminal charge. "In our construction of the erasure statute, we must consider the requirements of any other statute that regulates the disposition of data acquired by the police in the ordinary course of a criminal proceeding." *State* v. *West*, supra, 192 Conn. 493.

Accordingly, a court may consider privacy considerations and other statutory or common-law privileges in refusing to allow disclosure of erased records, even to the subject of the records. *West* also suggests a definition of the phrase "pertaining to such charge," contained in subsection (a) of § 54-142a, by noting that a photograph does not disclose when or where a person was arrested, the nature of or circumstances surrounding the crime charged or the names of witnesses from whom further information may be obtained. *State* v. *West*, supra, 192 Conn. 496.

The state has declined to produce thirty-three documents, asserting that none of the withheld documents pertain to the charge as described in § 54-142a (a). The state further claims that all the withheld documents are also protected under the attorney work product doctrine and that several are protected as personnel records, the disclosure of which would constitute an invasion of privacy under the Freedom of Information Act. Following an in camera inspection of the documents, the court orders as follows: the state shall produce for Weber privilege log items 1, 2, 3, 4, 5, 6, 7, 8, 10, 11, 12, 13, 14, 15, 22, 23, 25, 26, 28, 30, 31 and 32; the state shall not be required to produce privilege log items 9, 16, 17, 18, 19, 20, 21, 24, 27, 29 and 33.

I

DISCUSSION

A

Records Not Pertaining to the Charge

The state claims that none of the thirty-three documents submitted under seal are records "pertaining to the charge," as required by § 54-142a (a), rendering them not discoverable.

Despite the state's claims, upon review, the court finds that all of the records, except privilege log items 20, 21 and 33, do pertain to the dismissed charge against Weber. As noted previously, anything that discloses when or where a person was arrested, the nature of or circumstances surrounding the crime charged, or the names of witnesses from whom further information may be obtained, pertains to the charge. The state relies on *Martin* v. *Grievance Committee*, supra, Superior Court, Docket No. CV-02-0097910, but that case is distinguishable, as it involved a grievance hearing in which a document in a personnel investigation of a former prosecutor who had been arrested for criminal conduct, which the court specifically held did not pertain to the charge, was sought. Even so, the item sought was, in fact, ordered disclosed as a matter of public concern, despite privacy considerations expressed by the former prosecutor, the subject of the record.

B

Attorney Work Product Doctrine

The state further claims that all thirty-three documents are absolutely protected under the attorney work product doctrine.

Work product doctrine protects an attorney's "interviews, statements, memoranda, correspondence, briefs,

mental impressions, personal beliefs, and countless other tangible and intangible [items]." *Hickman* v. *Taylor*, 329 U.S. 495, 511, 67 S. Ct. 385, 91 L. Ed. 451 (1947).

The work product protection is not absolute. Exceptions to this doctrine have been recognized in Connecticut and other jurisdictions. Documents designated as work product, even the strategies, theories and mental impressions of an attorney, may be discovered where the requested materials are essential to a party's claim and cannot be otherwise obtained. *Bourget* v. *Government Employees Ins. Co.*, 48 F.R.D. 29, 31 (D. Conn. 1969); *Cloutier* v. *Liberty Mutual Ins. Co.*, Superior Court, judicial district of Fairfield, Docket No. CV-90-0278184S (March 6, 1998) (21 Conn. L. Rptr. 472, 473) (*Mottolese, J.*), aff'd, 60 Conn. App. 904, 759 A.2d 1056 (per curiam), cert. denied, 255 Conn. 919, 763 A.2d 1040 (1998); *Robarge* v. *Patriotic General Ins. Co.*, 42 Conn. Sup. 164, 608 A.2d 722 (1992).

In *Cloutier* v. *Liberty Mutual Ins. Co.*, Superior Court, judicial district of Fairfield, Docket No. CV-90-0278184S (May 19, 1998) (*Mottolese, J.*), a decision subsequent to the aforementioned *Cloutier* case, the plaintiff, just as in the earlier case, needed certain documents to prove her chief allegation, which was that the defendant insurer had acted in bad faith in failing to pay a settlement to her, its insured. The court ordered those materials produced, using a fact specific balancing test that weighed the benefit gained by disclosure in the interest of justice with injury that would be caused to the attorney-client relationship. The court held that "[a]ny generalized, nonspecific and nonpredictive injury which the defendant claims will befall its relationship with [its attorney] is substantially outweighed by this [plaintiff's] need to examine these documents to enable her to develop factually the core of her case." Id. In a similar bad faith case, the Arizona Supreme Court held that even work product may be produced,

if substantial need exists and the documents are otherwise unavailable. "[B]ad-faith actions against an insurer, like actions by client against attorney, patient against doctor, can only be proved by showing exactly how the company processed the claim, how thoroughly it was considered, and why the company took the action it did." *Brown* v. *Superior Court In & For Maricopa County*, 137 Ariz. 327, 336, 670 P.2d 725 (1983). The consideration of the advice of counsel is central to the issue of whether the action taken was made in good or bad faith. *Fidelity & Casualty Ins. Co. of New York* v. *Taylor*, 525 So. 2d 908, 909 (Fla. App. 1987), review denied, 528 So. 2d 1181 (Fla. 1988).

The state relies on *Chasen* to support its assertion of work product privilege, but that case is inapposite. In *Chasen* the plaintiff, who was arrested and charged with larceny in the first degree upon a complaint of the defendant Blue Cross and Blue Shield of Connecticut, had his charges nolled by the state and dismissed by the court. In his suit against the defendant for false arrest and abuse of process, the plaintiff subpoenaed an assistant state's attorney and sought "[a]ny and all material in your files relative to [the criminal case.]" *Chasen* v. *Blue Cross & Blue Shield*, supra, Superior Court, Docket No. CV-91-0380655. Unlike the present case, however, the plaintiff was not suing the state, a factor highlighted by the court: "It should be noted that the state of Connecticut is not a party to this action." Id.

This court is persuaded by the *Cloutier* decisions and related authority. In the case before the claims commission, Weber's claim of false arrest and malicious prosecution against the state specifically references alleged misconduct on the part of the prosecution, namely, that the subsequent "arrest and prosecution of the claimant were without legal justification or merit and in violation of Claimant's state and federal rights." To prove these allegations, he requires materials

that pertain to the thought processes of the state's attorneys handling this matter. Civil rights actions against governmental officials for false arrest and malicious prosecution generally fail on the basis of qualified immunity unless, on an objective basis, it is obvious that "no reasonably competent officer would have concluded that a warrant should issue . . . ." (Internal quotation marks omitted.) *Crone* v. *Connelly*, 74 Conn. App. 788, 798, 813 A.2d 1084, aff'd, 267 Conn. 581, 840 A.2d 552 (2004). Liability, therefore, is, in part, a question of reasonableness under the circumstances. The portions of the state's attorney's file that explain how the prosecutor processed and considered the merits of the criminal charge are certainly relevant. In an action such as the one Weber contemplates, the need for the information in the file is substantial. To prove the alleged wrongdoing by state officials, including illegal search and seizure, illegal arrest and malicious prosecution, Weber needs these materials and information, and is unable to obtain their equivalent by any other means.

Unlike cases involving private clients, here, there is little likelihood of prejudice or injury to the attorney-client relationship, as a state's attorney does not actually have such a relationship.[3] Connecticut courts have long recognized the special role played by the state's attorney. "He is not only an officer of the court, like every other attorney, but is also a high public officer, representing the people of the State, who seek impartial justice for the guilty as much as for the innocent." (Internal quotation marks omitted.) *State* v. *Henry*, 72 Conn. App. 640, 673, 805 A.2d 823, cert. denied, 262 Conn. 917, 811 A.2d 1293 (2002); see also *State* v. *Alexander*, 254 Conn. 290, 302, 755 A.2d 868 (2000).

Wigmore, in support of this description of the prosecutorial role, notes that a communication from a com-

---

[3] The state does not raise the issue of attorney-client privilege.

plainant to a prosecutor, seeking redress, is not protected by the attorney-client privilege. 8 J. Wigmore, Evidence (McNaughton Rev. 1961) § 2375, p. 776. The prosecutor's official responsibility "disables him from giving advice as a [retained] partisan attorney" once a complaint is filed. Id., § 2316, p. 617; see also *State* v. *Harris*, 147 Conn. 589, 597, 164 A.2d 399 (1960) (communication by noninforming defendant to state's attorney prior to arrest deemed not privileged). The court fails to see how public disclosure of the process that may have gone into an exercise of prosecutorial discretion in a terminated prosecution is a particularly harmful consequence, especially when the one person disclosure would be most harmful to, Weber, is seeking the publication.

Although the following items are attorney work product, the court finds that they fall under the exception in the *Cloutier* decisions and, thus, must be produced: privilege log items 1, 2, 3, 4, 5, 6, 7, 8, 10, 11, 12, 13, 14, 15, 17, 22, 23, 25, 28, 30, 31 and 32. The necessity for disclosure to Weber in the interest of justice outweighs the necessity for preserving the confidentiality of the information contained in these materials.

The following documents do not have to be produced, as they are protected under the attorney work product doctrine and the exception in the *Cloutier* decisions does not apply: privilege log items 16, 18, 19, 20, 21, 24, 26, 27, 29 and 33.

C

Personnel Records-Invasion of Privacy

The state claims that privilege log items 1, 2, 3, 4, 7, 8, 11, 14 and 15 are protected under the "personnel files" exception of the Freedom of Information Act

(act). General Statutes § 1-210 (a) of the act provides in relevant part: "Except as otherwise provided by any federal law or state statute, all records maintained or kept on file by any public agency, whether or not such records are required by any law or by any rule or regulation, shall be public records and every person shall have the right to . . . inspect such records promptly . . . or . . . copy such records . . . or receive a copy of such records in accordance with [the provisions of] section 1-212 . . . ."

Section 1-210 (b) of the act provides in relevant part: "Nothing in the Freedom of Information Act shall be construed to require disclosure of . . . [p]ersonnel or medical files and similar files the disclosure of which would constitute an invasion of personal privacy . . . ."

Although the act does not define "personnel file," our Supreme Court has observed that "a 'personnel' file has as one of its principal purposes the furnishing of information for making personnel decisions regarding the individual involved. If a document or file contains material, therefore, that under ordinary circumstances would be pertinent to traditional personnel decisions, it is 'similar' to a personnel file. Thus, a file containing information that would, under ordinary circumstances, be used in deciding whether an individual should, for example, be promoted, demoted, given a raise, transferred, reassigned, dismissed or subject to other such traditional personnel actions, should be considered 'similar' to a personnel file for the purposes of [§ 1-210 (b)]." *Connecticut Alcohol & Drug Abuse Commission* v. *Freedom of Information Commission*, 233 Conn. 28, 41, 657 A.2d 630 (1995).

The "invasion of personal privacy" clause of § 1-210 (b) has been interpreted in keeping with its common-law tort meaning under 3 Restatement (Second), Torts

§ 652D (1977). That is, "public disclosure of any matter that '(a) would be highly offensive to a reasonable person, and (b) is not of legitimate concern to the public.' " *Perkins* v. *Freedom of Information Commission*, 228 Conn. 158, 172, 635 A.2d 158 (1993). It does not authorize a blanket protection of all contents of a public employee's personnel files from public disclosure.

A review of the items that the state claims are personnel records shows nothing that clearly refers to subject matter pertinent to traditional personnel decisions. None of the items is actually drawn from personnel files. Rather, they contain requests from superiors to an assistant state's attorney that he explain certain decisions he made in the handling of the criminal case against Weber. They clearly pertain to the charge and were not prepared solely to address a personnel issue, but were part of the office's internal discussions as to the handling of the criminal file. They do not even purport to threaten disciplinary action, as was the case with the item sought to be disclosed in *Martin*.

In *Martin*, the court concluded that the item sought to be disclosed was a personnel document. The court ordered the item disclosed anyway, however, ruling that it was not an invasion of privacy to release to the grievance committee a document about an attorney's misconduct. Conversations memorialized in privilege log items 2 and 11, where defense counsel was present, occurred with respect to a conflict that arose just prior to the dismissal of the present case between an assistant state's attorney and his superiors. It would not be highly offensive to a reasonable person to disclose these matters to Weber, whose counsel, in fact, already knows of the existence of some disagreement among members of the office of the chief state's attorney with respect to the handling of his case. The court also finds that the disclosure of documents pertaining to these internal

discussions may be of legitimate concern to the public. This court, therefore, finds that privilege log items 1, 2, 3, 4, 7, 8, 11, 14 and 15 are not protected as belonging to a personnel or similar file.

II

CONCLUSION

The state is ordered to make the privilege log items ordered disclosed available to Weber's counsel for inspection and copying, or provide copies to him, on or before December 22, 2004.