13-3315
*Martin v. Hearst Corporation*

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

—————————

August Term, 2014

(Argued: August 18, 2014     Decided: January 28, 2015)

Docket No. 13-3315


LORRAINE MARTIN, Individually and on Behalf of
all Others Similarly Situated,

*Plaintiff-Appellant*,


-v.-


HEARST CORPORATION, SOUTHERN CONNECTICUT NEWSPAPERS, INC.,
dba DAILY GREENWICH, NEWS 12 INTERACTIVE, INC.,

*Defendants-Appellees*,

MAIN STREET CONNECT, LLC,

*Defendant*.

—————————


Before: WALKER, JACOBS, and WESLEY, *Circuit Judges*

Appeal from an August 16, 2013 judgment of the United States District Court for the District of Connecticut (Shea, J.). Plaintiff-Appellant Lorraine Martin brought an action alleging libel and other publication-related claims against media outlets that published accounts of her 2010 arrest. She alleged that although the accounts were factually true when published, they became false and defamatory when the charges against her were nolled because, under Connecticut's Criminal Records Erasure Statute, when charges against an individual are nolled or dismissed, that individual's criminal records are erased and he is "deemed to have never been arrested." The district court granted Defendants' motions for summary judgment and dismissed each of Martin's claims. We AFFIRM.

RYAN O'NEILL (Mark Sherman, *on the brief*), The Law Offices of Mark Sherman, LLC, Stamford, CT, *for Plaintiff-Appellant*.

JONATHAN R. DONNELLAN (Courtenay O'Connor, *on the brief*), Hearst Corporation, New York, NY, *for Defendant-Appellee Hearst Corporation*.

DAVID A. SCHULZ (Cameron Stracher, *on the brief*), Levine Sullivan Koch & Schulz, New York, NY, *for Defendant-Appellee News 12 Interactive*.

Eugene Volokh, UCLA School of Law First Amendment Amicus Brief Clinic, Los Angeles, CA, *for Reporters Committee for Freedom of the Press*.

WESLEY, *Circuit Judge*:

Plaintiff-Appellant Lorraine Martin was arrested in 2010. Local media outlets published stories accurately reporting the arrest and that Martin was charged with various drug-related offenses. Although she concedes that the

articles were factually true at the time they were published, Martin sued the

publishers for libel and related claims on the theory that it became false and

defamatory to report her arrest once the charges against her were nolled[1] and the

records of her arrest and prosecution erased pursuant to Connecticut's Criminal

Records Erasure Statute, Conn. Gen. Stat. § 54-142a (the "Erasure Statute"). The

Erasure Statute requires that criminal records related to an arrest be destroyed if

the individual is subsequently found not guilty or pardoned or if the charges are

nolled or dismissed. The statute further provides that "[a]ny person who shall

have been the subject of such an erasure shall be deemed to have never been

arrested within the meaning of the general statutes with respect to the

proceedings so erased and may so swear under oath." Conn. Gen. Stat. § 54-

142a(e)(3). This appeal requires us to determine whether, because the charges

against her were nolled and she is now "deemed to have never been arrested,"

Martin is entitled to assert various publication-related claims against the

---

[1] A nolle prosequi is a "unilateral act by a prosecutor, which ends the pending proceedings without an acquittal and without placing the defendant in jeopardy." *Cislo v. City of Shelton*, 240 Conn. 590, 599 n.9 (1997) (internal quotation marks and citations omitted); *see generally* Bernard A. Kosicki, *The Function of Nolle Prosequi and Motion to Dismiss in Connecticut*, 36 Conn. B.J. 159 (1962). Under Connecticut law, a nolle prosequi terminates the prosecution, but the prosecutor may initiate a new action against the defendant within the statute of limitations. *See State v. Smith*, 289 Conn. 598, 611 (2008). A nolle prosequi may not be entered if the accused objects and demands either a trial or dismissal. Conn. Gen. Stat. § 54-56b.

publishers of contemporaneous news accounts of her arrest on the ground that those accounts are now false or misleading.

We conclude that the Erasure Statute does not render tortious historically accurate news accounts of an arrest and therefore affirm the district court's grant of summary judgment for the Defendants.

## BACKGROUND

Martin and her two sons were arrested on August 20, 2010, after police, who suspected a drug ring was operating out of her house, searched her home and found marijuana, scales, plastic bags, and drug paraphernalia. Martin and her sons were charged with various offenses related to the possession of narcotics and drug paraphernalia.

Local newspapers reported Martin's arrest. On August 26, 2010, the *Connecticut Post*, *Stamford Advocate*, and *Greenwich Time*, all owned by Defendant-Appellee Hearst Corporation, published articles online, stating that Martin had been "arrested and charged with numerous drug violations Aug. 20 after police received information that a pair of brothers were [sic] selling marijuana in town." J.A. 26, 28, 30. On August 27, 2010, Defendant-Appellee News 12 Interactive LLC published an Internet article that reported that Martin was "arrested on Aug. 20

4

after police say they confiscated 12 grams of marijuana, scales and traces of cocaine from [her] house." J.A. 32. Martin concedes that these reports were accurate at the time they were published. The articles remain available online.

More than a year after the Defendants published the reports of Martin's arrest, the State of Connecticut decided not to pursue its case against her, and a nolle prosequi was entered in January 2012. Because the criminal case against her was nolled, Martin's arrest records were erased pursuant to the Erasure Statute.[2]

After the case against her was nolled, Martin asked each of the Defendants to remove the accounts of her arrest from their respective websites. In her view, once erasure occurred in January, 2011, it became false and defamatory to report

---

[2] The operative sections of the statute provide as follows:

> (c)(1) Whenever any charge in a criminal case has been nolled in the Superior Court, or in the Court of Common Pleas, if at least thirteen months have elapsed since such nolle, all police and court records and records of the state's or prosecuting attorney or the prosecuting grand juror pertaining to such charge shall be erased . . . .
> . . .
> (e)(3) Any person who shall have been the subject of such an erasure shall be deemed to have never been arrested within the meaning of the general statutes with respect to the proceedings so erased and may so swear under oath.

Conn. Gen. Stat. § 54-142a(c)(1).

of her arrest because, by operation of the Erasure Statute, she is "deemed to have never been arrested within the meaning of the general statutes with respect to the proceedings so erased." Conn. Gen. Stat. § 54-142a(e)(3).

When the Defendants refused to remove the stories from their websites, Martin filed suit in the United States District Court for the District of Connecticut, asserting causes of action for libel, placing another in a false light before the public, negligent infliction of emotional distress, and invasion of privacy by appropriation. The district court (Shea, J.) awarded summary judgment to the Defendants on all claims. It reasoned that "the 'deemer' provision of Connecticut's erasure laws does not alter the historical fact that Ms. Martin was arrested" and that all of Martin's claims necessarily fail because "there is no genuine dispute that the reports of her 2010 arrest in the articles at issue remain as true now as on the date they were first published." *Martin v. Hearst Corp.*, No. 3:12cv1023 (MPS), 2013 WL 5310165, at *1 (D. Conn. Aug. 5, 2013).

On appeal to this Court, Martin reiterates her argument that, even though she was arrested, once erasure occurred in January 2011, it became false and defamatory to publish statements regarding that arrest.

6

# DISCUSSION[3]

The consequences of a criminal arrest are wide-ranging and long-lasting, even where an individual is subsequently found not guilty or the charges against him are dismissed. Employers or landlords might, for example, discriminate against prospective employees or tenants who have arrest records without distinguishing those merely arrested from those arrested and subsequently convicted. To "protect individuals who are arrested but not convicted from the adverse effects of an arrest record," *State v. West*, 192 Conn. 488, 493 (1984), the Erasure Statute wipes the slate clean by "[p]rohibiting the subsequent use of records of [a] prior arrest and court proceedings," *State v. Morowitz*, 200 Conn. 440, 451 (1986), and requiring the state to erase official records of an arrest if the individual is subsequently found not guilty or pardoned or if the charges against him are nolled or dismissed.

The Erasure Statute further provides that "[a]ny person who shall have been the subject of such an erasure shall be deemed to have never been arrested within the meaning of the general statutes with respect to the proceedings so

---

[3] A district court's award of summary judgment is reviewed de novo. *Nora Beverages Inc. v. Perrier Grp. of Am., Inc.*, 164 F.3d 736, 742 (2d Cir. 1998). Summary judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).

erased and may so swear under oath." Conn. Gen. Stat. § 54-142a(e)(3). The statute thus "insulat[es] the defendant from the consequences of the prior prosecution" by ensuring that "the defendant is no longer considered to have been arrested for the alleged crimes to which the records pertained" and allowing him to swear so under oath. *State v. Apt*, 146 Conn. App. 641, 649–50 (Conn. App. Ct. 2013) (alterations and internal quotation marks omitted).

### The Historical Truth of Martin's Arrest

Although Martin concedes that she was, in fact, arrested on August 20, 2010, she argues that it became false to publish statements regarding the arrest after the charges against her were nolled. She reasons that the Erasure Statute rendered it factually false to continue to state that she was arrested and that the Defendants' once-true reports have become defamatory.

Martin misunderstands the effect of the Erasure Statute. Subsection (e)(3) *deems* a person to have never been arrested. Conn. Gen. Stat. § 54-142a(e)(3) (emphasis added). That is to say, as a matter of legal fiction, the defendant is no longer considered to have been arrested. Thus, the Erasure Statute bars the government from relying on a defendant's erased police, court, or prosecution records in a later trial, *Morowitz*, 200 Conn. at 447–48, prohibits courts from

8

relying on the defendant's historical status as an arrestee to enhance his sentence for a later offense, *Apt*, 146 Conn. App. at 648–50, and entitles a defendant to swear under oath that he has never been arrested, Conn. Gen. Stat. § 54-142a(e)(3). If the state decides to reverse course and charge a defendant whose records have been erased, it may not simply reactivate the nolled charges, but must instead charge the defendant in a new information as if he had not previously been arrested and charged. *State v. Anonymous (1987–1)*, 11 Conn. App. 224, 225 & n.1 (Conn. App. Ct. 1987) (per curiam).

"[W]e are bound to interpret Connecticut law according to Connecticut's own interpretive rules." *Morenz v. Wilson-Coker*, 415 F.3d 230, 236–37 (2d Cir. 2005). Under those rules, "[t]he meaning of a statute shall, in the first instance, be ascertained from the text of the statute itself and its relationship to other statutes." Conn. Gen. Stat. § 1-2z. It therefore matters that the statute appears in the Criminal Procedure title of the Connecticut General Statutes (title 54), not the title dealing with Civil Actions (title 52). The legislature evidently did not intend to provide a basis for defamation suits.

Accordingly, the statute only requires that *certain* official records be erased.[4]  The few enumerated exceptions to the erasure requirements and the statute's text confirm that the legislature contemplated erasure only in the context of the judicial and law enforcement systems.[5]  As the district court reasoned, "[n]othing in [§ 54-142a] suggests any intent to impose requirements on persons who work outside courts or law enforcement agencies, and nothing suggests any intent to mandate the erasure of records held by such persons."  *Martin*, 2013 WL 5310165, at *3.

---

[4] *See, e.g.*, *West*, 192 Conn. 496–97 ("hold[ing] that the fingerprints, pictures and descriptions and other identification data . . . are not among the records whose disclosure is governed by § 54-142a") (internal quotation marks omitted); *cf. State v. Weber*, 49 Conn. Supp. 530, 531–32 (Conn. Super. Ct. 2004) ("The fundamental purpose of the statute is served by permitting limited disclosure of the records to counsel for the state in order for it to take reasonable steps to defend itself against Weber's threatened action while sealing and segregating the records to prevent disclosure to anyone else.").

[5] "[A] record or transcript of the proceedings made or prepared by an official court reporter, assistant court reporter or monitor" does not have to be erased, Conn. Gen. Stat. § 54-142a(h), and a court may order disclosure of "erased" records "to a defendant in an action for false arrest arising out of the proceedings so erased" or "to the prosecuting attorney and defense counsel in connection with any perjury charges which the prosecutor alleges may have arisen from the testimony elicited during the trial," § 54-142a(f).  Subsections (b) and (c)(1) provide that, in certain kinds of cases, "the clerk or any person charged with the retention and control of" "police and court records and records of the state's or prosecuting attorney . . . pertaining to [the] charge[s]" "shall not disclose to anyone their existence or any information pertaining to any charge so erased." § 54-142a(b), (c)(1).  And, subsection (e) is specifically addressed to "[t]he clerk of the court or any person charged with retention and control of such records in the records center of the Judicial Department or any law enforcement agency."  § 54-142a(e)(1).

10

In short, the Erasure Statute requires the state to erase certain official records of an arrest and grants the defendant the *legal status* of one who has not been arrested.  But the Erasure Statute's effects end there.  The statute creates legal fictions, but it does not and cannot undo historical facts or convert once-true facts into falsehoods.  Just as the Erasure Statute does not prevent the government from presenting witness testimony at a later trial that describes the conduct that underlies an erased arrest, *Morowitz*, 200 Conn. at 448–49, the statute does not render historically accurate news accounts of an arrest tortious merely because the defendant is later deemed as a matter of legal fiction never to have been arrested.

Connecticut courts confirm our view.  In *Martin v. Griffin*, a Connecticut Superior Court rejected the notion that "the statement that the plaintiff was arrested is false in its entirety because the arrest 'was deemed never to have occurred pursuant to C.G.S. Section 54-142a(e),'" No. CV 990586133S, 2000 WL 872464, at *12 (Conn. Super. Ct. June 13, 2000).  The Superior Court explained that the Erasure Statute "operates in the legal sphere, not the historical sphere," and it "does not, and could not, purport to wipe from the public record the fact

that certain historical events have taken place." *Id.* Courts in other states with analogous statutes are in accord.[6]

Here, the uncontroverted fact is that Martin was arrested on August 20, 2010, and that the reports of her arrest were true at the time they were published. Neither the Erasure Statute nor any amount of wishing can undo that historical truth. The Moving Finger has written and moved on.[7] Because there is no dispute that the articles published by the Defendants accurately report Martin's arrest, her various publication-related tort claims necessarily fail. Martin's

---

[6] *See, e.g.*, *G.D. v. Kenny*, 15 A.3d 300, 315–16 (N.J. 2011) ("[T]he expungement statute does not transmute a once-true fact into a falsehood. It does not require the excision of records from the historical archives of newspapers or bound volumes of reported decisions or a personal diary. . . . It is not intended to create an Orwellian scheme whereby previously public information—long maintained in official records—now becomes beyond the reach of public discourse on penalty of a defamation action. Although our expungement statute generally permits a person whose record has been expunged to misrepresent his past, it does not alter the metaphysical truth of his past, nor does it impose a regime of silence on those who know the truth."); *Bahr v. Statesman Journal Co.*, 624 P.2d 664, 666 (Or. Ct. App. 1981) ("The [expungement] statute does not, however, impose any duty on members of the public who are aware of the conviction to pretend that it does not exist. In other words, the statute authorizes certain persons to misrepresent their own past. It does not make that representation true."); *Rzeznik v. Chief of Police of Southhampton*, 373 N.E.2d 1128, 1133 (Mass. 1978) ("There is nothing in the statute or the legislative history to suggest that, once the fact of a conviction is sealed, it becomes nonexistent, and hence untrue for the purposes of the common law of defamation.").

[7] "The Moving Finger writes; and, having writ,
Moves on: nor all thy Piety nor Wit
Shall lure it back to cancel half a Line,
Nor all thy Tears wash out a Word of it." *Rubáiyát of Omar Khayyám*, stanza 71 (Edward Fitzgerald trans., 4th ed. 1879).

claims for libel and placing another in a false light fail because the articles do not contain falsehoods. Her claim for negligent infliction of emotional distress fails because there is nothing negligent about publishing a true and newsworthy article. *See Finnelli v. Tepfer*, No. CV075011659S, 2009 WL 1424688, at *7 (Conn. Super. Ct. Apr. 24, 2009). And her claim for invasion of privacy by appropriation fails because a newspaper does not improperly appropriate an individual's name or likeness merely by publishing an article that brings the individual's activities before the public. *See* Restatement (Second) of Torts § 652C cmt. d.

### *Defamation by Implication*

Martin next argues that even if the Erasure Statute does not make the statements about her arrest technically false, the reports of her arrest are nonetheless defamatory because they only tell part of the story. The articles report that she was arrested and charged without mentioning that the criminal case against her was eventually nolled.

It is axiomatic, of course, that truth is an absolute defense to a defamation claim. But in certain circumstances even a technically true statement can be so constructed as to carry a false and defamatory meaning by implication or innuendo. Where a publication implies something false and defamatory by

13

omitting or strategically juxtaposing key facts, the publication may be actionable even though all of the individual statements are literally true when considered in isolation. *See Strada v. Conn. Newspapers, Inc.*, 193 Conn. 313, 322–23 (1984); *see also* Robert D. Sack, *Sack on Defamation* § 3:8 (4th ed. 2010).

The classic example of defamation by implication is *Memphis Publishing Co. v. Nichols*, 569 S.W.2d 412 (Tenn. 1978), in which a newspaper reported that a woman, upon arriving at the home of another woman and finding her own husband there "first fired a shot at her husband and then at [the other woman], striking her in the arm." *Id.* at 414. The article neglected to mention, however, the additional facts that several neighbors and the husband of the other woman were also present, that all were sitting together in the living room talking, and that the shooting was accidental. Even though the statements in the article were all technically true, the article falsely implied that the husband and the other woman had been shot at because they were caught in an adulterous affair and had become targets of an enraged wife—a meaning both false and defamatory. *Id.* at 419.

The news reports at issue in this case, however, do not imply any fact about Martin that is not true. They simply state that she was arrested and

14

criminally charged, both of which Martin admits are true. Reasonable readers understand that some people who are arrested are guilty and that others are not. Reasonable readers also know that in some cases individuals who are arrested will eventually have charges against them dropped. Reporting Martin's arrest without an update may not be as complete a story as Martin would like, but it implies nothing false about her. Accordingly, we reject Martin's contention that the reports of her arrest are defamatory because they fail to mention that the case against her was eventually nolled.

## CONCLUSION

We have considered all of Martin's arguments on appeal and find them to be without merit. For the foregoing reasons, the judgment of the district court granting summary judgment for the Defendants is AFFIRMED.