A.R.P. v City of New York (2026 NY Slip Op 50118(U))

[*1]

A.R.P. v City of New York

2026 NY Slip Op 50118(U)

Decided on February 4, 2026

Supreme Court, New York County

Chesler, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on February 4, 2026
Supreme Court, New York County

A.R.P., A MINOR OVER THE AGE OF 14 YEARS, BY HIS MOTHER AND NATURAL GUARDIAN, LATISHA SHAW, LATISHA SHAW, Plaintiff,

againstThe City of New York, THE NEW YORK CITY POLICE DEPARTMENT, NYP HOLDINGS, INC. D/B/A NEW YORK POST, Defendant.

Index No. 161788/2024

Counsel for Plaintiff (A.R.P., a minor over the age of 14 years, by his Mother and Natural Guardian, Latisha Shaw):Rodman and Campbell PC1428 E Gun Hill Rd, 
Bronx, NY 10469By: Hugh W. Campbell Esq.Counsel for Defendant (NYP Holdings, Inc. d/b/a New York Post):Davis Wright Tremaine LLP1251 Avenue of the Americas, 42nd FloorNew York, NY 10020By: Robert D. Balin, Esq., Nimra Azmi, Esq.

Ariel D. Chesler, J.

The following e-filed documents, listed by NYSCEF document number (Motion 001) 2, 3, 4, 5, 6, 7, 8, 9, 19, 20, 21, 24, 25 were read on this motion to/for DISMISS.
The following e-filed documents, listed by NYSCEF document number (Motion 002) 12, 13, 14, 15, 16, 17 were read on this motion to/for DISMISSAL.
Upon the foregoing documents, it isIn this action, plaintiffs set forth causes of action for, inter alia, defamation and defamation by implication against defendant NYP Holdings d/b/a New York Post (hereinafter "NYP"). Separately, plaintiffs set forth claims against defendant the City of New York for, inter alia, wrongful arrest and civil rights violations.
In motion sequence 1 Defendant NYP moves to dismiss the complaint and for an award of counsel fees as provided in Civil Rights Law §70-a. Plaintiffs oppose the motion. In motion sequence 2, NYP moves to dismiss the City's cross-claim asserted against NYP.
BACKGROUNDThis matter arose in the wake of a fatal stabbing that took place on December 15, 2023, in Manhattan's Flatiron District. Tragically, an 18-year-old man was stabbed multiple times in his chest, shoulder and arm and rushed to Bellevue Hospital, where he later died.
On the day following the stabbing, NYP published an article covering the incident (NYSCEF DOC 5). In addition to the above information, the article identified the victim as Denzel Bimpey and stated that it occurred on the corner of East 26th Street and Park Avenue South. The article went on to state that according to police the "attacker ran off."
However, the article also indicated that a "person of interest" was taken into custody but had not been charged. In connection with that information the article also included photographs of the scene, including multiple photographs of plaintiff A.R.P., a minor, taken from the front and the rear, showing him in handcuffs and surrounded by police officers. These photographs are credited to a Kevin C. Downs. Beneath one of the photographs of plaintiff A.R.P. it states "Despite the attacker running off, a person of interest was apprehended." Beneath another photograph, it states "the person of interest has not yet been charged."
THE COMPLAINTIn the complaint, plaintiffs allege that "on December 16, 2023, Kevin C. Downs was an employee of the defendant, NYP HOLDINGS, INC. d/b/a NEW YORK POST, and acting within the scope of his employment when he caused the minor plaintiff photograph and likeness, while being shackled and/or handcuffed, and surrounded by NEW YORK CITY POLICE DEPARTMENT police officers to be photographed and published in their daily newspaper and publication in New York State and throughout the world." (NYSCEF DOC 1 at ¶24).
As to the City, the complaint alleges that "on the 15th day of December, 2023, at or about 11 :28 p.m. of that day, officers employed by defendants, THE CITY OF NEW YORK and/or THE NEW YORK CITY POLICE DEPARTMENT, while acting within the scope of their employment, with force and arms, wrongfully, negligently, intentionally, knowingly and willfully arrested, imprisoned and detained the minor plaintiff for no good reason, and held him in confinement and transported him in chains, shackles and/or handcuffs and he was forcefully taken to THE NEW YORK CITY POLICE DEPARTMENT, where he was held in a holding cell at a precinct; this being done unlawfully, maliciously and wrongfully against his own will and without just or probable cause" (NYSCEF DOC 1 at ¶25). The complaint further alleges that thereafter the police "subsequently released the minor plaintiff without criminal charges being filed against him" (NYSCEF DOC 1 at ¶26).
Plaintiffs further alleged that "the defendant NYP HOLDINGS, INC. d/b/a NEW YORK POST, its agents, servants or employees' publishing of the minor plaintiff's photograph and [*2]likeness while being shackled and/or handcuffed was duplicated and shared on various social media platforms, and was viewed by the minor plaintiff's family, friends, and members of his community, which has caused great scorn, embarrassment and humiliation to the minor plaintiff" (NYSCEF DOC 1 at ¶29).
Next, the complaint stated: "defendant, NYP HOLDINGS, INC. d/b/a NEW YORK POST has engaged in libelous and defamatory statements, both expressly and by implication, and are ones that would tend to harm the reputation of Plaintiff and/or deter third persons from associating with the minor plaintiff in the conduct of his personal and business life, Plaintiff is presumed to have suffered injury and damages, and Defendant has committed libel per se." (NYSCEF DOC 1 at ¶35).
The complaint also claimed "That the publication by Defendant, NYP HOLDINGS, INC. d/b/a NEW YORK POST, its agents, servants or employees' photographing and publishing the minor plaintiffs photograph and likeness, surrounded by police officers, with the captions; "The teen was stabbed multiple times in his chest, shoulder and arm and rushed to Bellevue Hospital, where he later died, authorities said", "Despite the attacker running off, a person of interest was apprehended", "The person of interest has not yet been charged". Although the minor plaintiff was not mentioned by name the mere photographing and publishing of the minor plaintiffs photograph while being shackled and/or handcuffed, and surrounded by NEW YORK CITY POLICE DEPARTMENT police officers, implied and suggested the minor plaintiff was involved in the reported incident" (NYSCEF DOC 1 at ¶36).
The complaint asserted that "the photographing and publishing the minor plaintiffs photograph and likeness, handcuffed and surrounded by police officers by Defendant, NYP HOLDINGS, INC. d/b/a NEW YORK POST, its agents, servants or employees' both expressly and by implication, are libelous and defamatory per se, as they falsely and outrageously imply that the minor plaintiff is a killer and a criminal. In such a case, damages resulting from Defendant's libelous and defamatory statements are also presumed as a matter of law (NYSCEF DOC 1 at ¶37).
The complaint contends that NYP's publishing the photographs was "negligent, irresponsible and without consideration for the standards of information gathering and dissemination followed by responsible parties. Same also ignored the potential threat of bodily harm to the minor plaintiff, in as much as it was initially reported that the incident for which the minor plaintiff was detained was "gang" related" (NYSCEF DOC 1 at ¶41).
Finally, the complaint alleges:
That the conduct of Defendant, NYP HOLDINGS, INC. d/b/a NEW YORK POST, its agents, servants or employees' in failing to timely investigate the alleged crime, and in failing to authenticate their story, and in disseminating false and damaging information about the minor plaintiff herein; caused the minor plaintiff great humiliation, embarrassment, loss of liberty, fear and mental anguish.That Defendant, NYP HOLDINGS, INC. d/b/a NEW YORK POST, its agents, servants or employees were careless and reckless in failing to authenticate their story and timely investigate the alleged crime, and in failing to authenticate their story, prior to disseminating said false and damaging information about the minor plaintiff herein; caused the minor plaintiff great humiliation, embarrassment, loss of liberty, fear and mental anguish. (NYSCEF DOC 1 at ¶43-44).Although the claims are not expressly pleaded, the Complaint also references negligence, right of publicity, and intentional or negligent infliction of emotional distress
In their Answer, the City Defendants include a cross-claim against the Post alleging in conclusory fashion that "Any damages sustained by the plaintiff(s) were caused in whole or in part by the acts or omissions of defendant(s) NYP HOLDINGS, INC. D/B/A NEW YORK POST, who are or may be liable to the defendant(s) answering hereby for contribution on the basis of their equitable shares of responsibility, or for indemnity on the basis of a contract between them, actual or implied" (NYSCEF DOC 10 at ¶ 13).
THE MOTIONSIn motion sequence 1, NYP argues that New York's Anti-SLAPP law applies to this matter because it involves a "communication in a place open to the public or a public forum in connection with an issue of public interest." Accordingly, they contend that NYP's motion to dismiss "shall be granted" unless the plaintiff can show that "the cause of action has a substantial basis in law or is supported by a substantial argument for an extension, modification, or reversal of existing law," citing CPLR 3211(g).
NYP further contends that the complaint fails to plead defamation because it fails to plead any false statements were made in the article, and just makes conclusory claims of falsity. In this regard, NYP notes that plaintiff does not dispute the accuracy of the reporting that a young man was murdered, that a person of interest (A.R.P.) was apprehended but not charged and that the attacker fled. Moreover, NYP adds that the complaint "repeatedly acknowledges that, just as the Post reported, the NYPD handcuffed and arrested A.R.P. on December 15, 2023, and he was not charged with any criminal offense."
NYP separately notes that pursuant to NY Civil Rights Law §74, NYP has an absolute privilege for accurately reporting on the police investigation. In addition, NYP claims that the complaint did not sufficiently plead facts to establish NYP published the article with actual malice, particularly because the statements in the article were true.
Regarding the defamation by implication claim, NYP asserts that reviewing the article as a whole it cannot be reasonably read to impart a defamatory inference and to suggest the author intended or endorsed that inference. In particular, NYP notes that the article makes clear that the attacker escaped and thus no reasonable reader could read the article and construe it to mean that plaintiff A.R.P. was a murderer or definitely involved in the incident.
As to other potential claims referenced in the complaint, NYP argues that the claims must also be dismissed. Specifically, NYP notes that plaintiff has no right of publicity or privacy in connection with photographs taken on a public sidewalk. NYP also asserts that the negligence claim is redundant of the defamation claim, and that the claims for negligent or intentional infliction of emotional distress are based on the same conduct as the defamation claim and must also be dismissed as redundant.
Finally, NYP maintains that it is entitled to attorney fees under NY Civil Rights Law §70-a.
In opposition, plaintiffs stress that the article in question was also published online and that another article appeared a few days later. Plaintiffs assert that the article "clearly" suggest that A.R.P. was involved in the killing and remark that the article failed to note that he was never charged with a crime. In support of the opposition, plaintiffs attached A.R.P.'s 50-h hearing testimony, noting that he stated no charges were filed against him (NYSCEF DOC 21). 
Responding to the motion to dismiss, plaintiffs argue that the complaint must be liberally construed and reviewed only to determine if the allegations fit any cognizable claim. In this regard, plaintiffs argue that the Anti-SLAPP law does not apply because the core allegation concerns defamation against a private individual. At the same time, plaintiffs concede that "the murder of Mr. Bimpey was a matter of public concern; (but not a matter of "public interest")" and "do not challenge the right of the defendant to report on the killing or the investigation generally."
Plaintiffs further assert "The Post's choice to pair Plaintiffs image with graphic reporting of a murder, while omitting his exoneration, renders the piece not a legitimate commentary on a public issue, but a misleading and defamatory portrayal of a private citizen. That is outside the core purposes of anti-SLAPP."
Moreover, they contend that "[m]inors, in particular, are afforded heightened legal protections to prevent harm to their personal development and reputations. Publicizing an image of a minor who was briefly detained, without any resulting criminal charge, could be seen as irresponsible and damaging, and should not be shielded under the anti-SLAPP law, which is typically designed to protect public debate, not the harm caused by reckless journalism."
Plaintiffs next claim that the article does not accurately report on the police investigation but is instead a misleading and defamatory implication of guilt. Plaintiffs suggest that their claim is really one for defamation by implication and thus the fact that no false statements appear in the article is irrelevant.
Separately, plaintiffs contend that their claims met the substantial basis standard required under CPLR 3211 (g).
Plaintiffs also maintain that they sufficiently alleged malice because the complaint claimed that NYP knew A.R.P. was released without charges but omitted that from the article, and had access to and ignored contrary facts.
Plaintiffs claim that their additional causes of action are not duplicative and should survive the motion.
Lastly, plaintiffs argue that NYP is not entitled to counsel fees even if the dismissal motion is granted because dismissal does not automatically trigger a right to such fees. They add that plaintiffs brought the action in good faith based on a substantial legal and factual basis.
In reply, NYP remarks that plaintiffs essentially admit that anti-SLAPP law applies because the article covered a matter of public concern. NYP again argues that Plaintiffs fail to state a defamation claim because the Article's plain language refutes the strained defamatory implications Plaintiff asserts. NYP reiterates that the Article—which reports on an NYPD investigation—is absolutely privileged under Section 74 as a fair report of an official proceeding. And, NYP maintains that the Complaint fails to plausibly plead that the Post published the Article with actual malice. NYP also stresses that they are entitled to an award of attorney fees upon dismissal of the action.
In motion sequence 2, NYP argues that there is no cognizable indemnification claim against NYP for their independent actions because (a) no contractual or other relationship exists between the City Defendants and the Post that would permit indemnification; and (b) the City Defendants cannot seek indemnification for their alleged intentional torts. NYP also contends that there is no basis for a contribution claim because the complaint alleges that City and NYP engaged in entirely distinct conduct causing distinct injuries.
The court agrees with NYP's arguments and the City does not oppose the motion. [*3]
Accordingly, it is granted and the cross-claim dismissed.
DISCUSSIONA. Defamation Claims
Pursuant to CPLR 3211(g) a motion to dismiss interposed pursuant to 3211(a) should be granted where "the moving party has demonstrated that the action, claim, cross claim or counterclaim subject to the motion is an action involving public petition and participation as defined in [Civil Rights Law § 76-a(1)(a)] ... unless the party responding to the motion demonstrates that the cause of action has a substantial basis in law or is supported by a substantial argument for an extension, modification or reversal of existing law."
Section 76-a(1)(a) of the Civil Rights Law defines "an action involving public petition and participation" as:
1) any communication in a place open to the public or public forum in connection with an issue of public interest; or
2) any other lawful conduct in furtherance of the exercise of the constitutional right of free speech in connection with an issue of public interest, or in furtherance of the exercise of the constitutional right of petition.
The statute further directs: "'Public interest' shall be construed broadly and shall mean any subject other than a purely private matter" (Civil Rights Law § 76-a[1][d]).
"New York courts have generally applied a broad interpretation to what constitutes a matter of public concern" (Aristocrat Plastic Surgery P.C. v Silva, 206 AD3d 26, 29 [1st Dept 2022]). But, this is not a close case or one that requires much deliberation. Here, plaintiffs essentially concede, and could not reasonably dispute that coverage of a killing on the streets of Manhattan relates to a matter of great public interest. To the extent the plaintiffs attempt to distinguish between matters or "public interest" and matters of "public concern" the court finds this argument unavailing. Accordingly, the Anti-SLAPP law applies to the claims against NYP in this action.
Regarding a claim for defamation, to prove a claim for defamation, a plaintiff must show: (1) a false statement that is (2) published to a third party (3) without privilege or authorization, and that (4) causes harm, unless the statement is one of the types of publications actionable regardless of harm (Stepanov v. Dow Jones & Co., Inc., 120 AD3d 28, 34 [1st Dept 2014]). However, insofar as plaintiffs' complaint is premised on express defamation, it must be dismissed, as these claims are based on substantially true statements that are not reasonably susceptible of defamatory connotations.
Specifically, plaintiffs do not and could not actually dispute the accuracy of the facts reported in the article. It is undisputed that a person was murdered in the Flatiron District, that the attacker ran off, and that a person of interest (plaintiff A.R.P.) was apprehended but not charged. At no point does plaintiff claim otherwise, and in fact he pleads that the NYPD arrested him on December 15, 2023, and that he was not charged with any offense.
Further, it is not defamatory to accurately report on plaintiff's arrest as a person of interest although he was not guilty of any crime. Indeed, reports of arrest and even investigations of individuals, if accurate, are not defamatory (see Cabello-Rondón v. Dow Jones & Company, Inc., 2017 WL 3531551 [SDNY 2017][dismissing defamation claim where plaintiff did not contest the underlying "gist" of the statements—namely, that he was under investigation by U.S. authorities for suspected drug trafficking and money laundering activities]).
In addition, the NYP's accurate report on the police investigation is given absolute privilege by Civil Rights Law §74. That section provides: "A civil action cannot be maintained against any person, firm or corporation, for the publication of a fair and true report of any judicial proceeding, legislative proceeding or other official proceeding, or for any heading of the report which is a fair and true headnote of the statement published." New York courts have broadly construed the meaning of an official proceeding (Fine v. ESPN, Inc., 11 F.Supp.3d 209, 214 [NDNY 2014]) which is essentially defined as "action taken by a person official empowered to do so" (Freeze Right Refrigeration and Air Conditioning Services, Inc. v. City of New York, 101 AD2d 175, 182 [1st Dept 1984]). It is settled that a police investigation constitutes an official proceeding (see Fine, 11 F Supp 3d at 214; see also D'Arata v. New York Post, 226 AD3d 560 [1st Dept 2024][Applying section 74 privilege to report of arrest]; Hayt v. Newsday, LLC, 176 AD3d 787 [2d Dept 2019][same]).
Nor has plaintiff sufficiently plead that NYP acted with actual malice. Civil Rights Law 76-a(2) requires that plaintiff establish by clear and convincing evidence that it communication was "made with knowledge of its falsity or with reckless disregard of whether it was false." As noted, there is no allegation that anything in the article is false.
Moreover, "Actual malice is measured by what defendant actually believed and not by whether reasonably prudent man would have published, or would have investigated before publishing" (Goldblatt v Seaman, 225 AD2d 585, 586 [2d Dept 1996]). "There must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication" (St. Amant v Thompson, 390 US 727, 731 [1968]).
Here, plaintiffs cannot show that the NYP acted with actual malice because the content of the article is true. The complaint does not plead facts from which actual malice can be inferred, and certainly does not meet anything approaching the clear and convincing evidence standard. The complaint merely contains boilerplate and conclusory statements about the supposed failures of NYP to investigate the crime and authenticate the story. However, no particular claims are made about what investigation or authentication was necessary, and the complaint does not dispute the accuracy of any facts in the article.
Plaintiffs true aim appears to be advancing a claim of defamation by implication. Plaintiffs stress that A.R.P. is a minor, who should be afforded greater protection, that the publication of the article had a tremendous psychological impact on him, and that the article "clearly" suggests that A.R.P. was involved in the killing and failed to note that he was never charged with a crime. They also question NYP's editorial choice to pair A.R.P.'s image with graphic reporting of a murder, while "omitting his exoneration." While the Court may sympathize with the emotional and other possible consequences faced by A.R.P., this claim also fails.
To plead a defamation by implication claim, a plaintiff must make a "rigorous showing" that "the language of the communication as a whole can be reasonably read both to impart a defamatory inference and to affirmatively suggest that the author intended or endorsed that inference" (Stepanov, 120 AD3d at 37-38). Here, there is no merit to plaintiffs' claim that the article and photographs imply he was involved in the incident, or was a killer and a criminal.
The article, viewed as a whole, can only be reasonably read to state that the person who committed the murder had "run off" but that the police had apprehended a different person of interest, A.R.P. At no point does the article state anything to suggest that A.R.P. was specifically part of an attack or definitively had anything to do with the incident. The article also makes clear [*4]that A.R.P. was not charged with a crime. The fact that beneath one photograph the article stated "the person of interest has not 
yet been charged" does not change the only reasonable reading of the article as a whole. Nor does anything support the idea that NYP intended to endorse the inference plaintiff claims. Indeed, the article "explicitly refutes the implication Plaintiff claims it has" (see Kavanagh v. Zwilling, 997 F. Supp. 2d 241, 255 [SDNY 2014]).
In Martin v Hearst Corp ., (777 F.3d 546, 553 [2d Cir. 2015]), the Second Circuit Court of Appeals, in dismissing a similar claim of defamation by implication, explained: 
The news reports at issue in this case, however, do not imply any fact about Martin that is not true. They simply state that she was arrested and criminally charged, both of which Martin admits are true. Reasonable readers understand that some people who are arrested are guilty and that others are not. Reasonable readers also know that in some cases individuals who are arrested will eventually have charges against them dropped. Reporting Martin's arrest without an update may not be as complete a story as Martin would like, but it implies nothing false about her. Accordingly, we reject Martin's contention that the reports of her arrest are defamatory because they fail to mention that the case against her was eventually nolled.The cogent points made by the court in Martin hold true and are equally applicable to this case. Reasonable readers continue to understand the differences between arrest, charges, guilt and so on. While plaintiffs here would have preferred a more complete story that included the fact that A.R.P. was not charged, there is nothing untrue in the article, and it does not imply anything untrue about A.R.P.
In sum, NYP has met its burden of demonstrating that the anti-SLAPP statute applies to this action and that plaintiffs fail to state a claim for defamation or defamation by implication. In turn, plaintiffs fail to establish a substantial basis in law to sustain the defamation claims (see CPLR 3211[g]). Accordingly, NYP's motion to dismiss will be granted.
B. Tort Claims
To the extent plaintiffs set forth additional claims in the complaint, they must also be dismissed. Indeed, the potential claims for negligence and for negligent or intentional infliction of emotional distress must be dismissed as duplicative of the defamation claims (see Reeves v Associated Newspapers, Ltd., 232 AD3d 10, 15 [1st Dept 2024]). Moreover, there are insufficient allegations of "extreme" or "outrageous" conduct (See Chanko v. Am. Broad. Companies Inc., 27 NY3d 46, 57—58 [2016]).
The potential privacy rights claim for under sections 50 and 51 of the Civil Rights Law also fails because courts "have consistently refused to construe [Section 51 claims] as encompassing publications concerning newsworthy events or matters of public interest" like the article in this matter (see Finger v. Omni Publ'ns Int'l, Inc., 77 NY2d 138, 141-42 [1990][rejecting Section 51 claim over photograph of plaintiff used to illustrate an article]; see also Howell v. New York Post Co., 81 NY2d 115, 124 [1993]; Fleischer v NYP Holdings, Inc., 104 AD3d 536 [1st Dept 2013]). Here, the photographs were published to illustrate the article covering the murder investigation.
C. Attorney Fees
Section 70-a(1)(a) of the Civil Rights Law provides for mandatory counsel fees "upon a demonstration ... that [an] action involving public petition and participation was commenced or continued without a substantial basis in fact and law and could not be supported by a substantial argument for the extension, modification or reversal of existing law," including where such an action is dismissed pursuant to CPLR 3211(g). Having found that this action involves public petition and participation and that plaintiffs fail to establish a substantial basis in fact or law to sustain the defamation claims, the Court finds that NYP is entitled to costs and counsel fees (see Reeves v Associated Newspapers, Ltd., 232 AD3d 10, 18-19 [1st Dept 2024][holding that if plaintiff fails to meet burden of showing a substantial basis for the claim then the defendant is entitled to an award of attorneys' fees]). There is no merit to plaintiffs' claim that they demonstrated a substantial basis in fact or law to support the claim, even though they may have brought the case in good faith.
Although the Court finds that NYP is entitled to an award of attorneys' fees, the Court is compelled to raise a concern about the purpose of the Anti-SLAPP law and the equities here. The First Department in Reeves provides a helpful history of New York's Anti-SLAPP Law which reminds us that initially the law applied to a small class of cases. As the Reeves Court noted:
the 2020 amendments expanded the scope of anti-SLAPP protections to encompass all public communications on any nonprivate matter (see Civil Rights Law § 76-a [1]). The amendments simplified a defendant's burden. On a CPLR 3211 (a) (7) motion to dismiss, the defendant bears the burden of showing that the action or claim is a SLAPP suit. Once the defendant satisfies this initial burden, the burden shifts to the plaintiff to demonstrate that its claim has a substantial basis (CPLR 3211 [g] [1]). If the plaintiff fails to meet that burden, then the covered action or claim is dismissed, with a concomitant mandatory award of attorneys' fees to the prevailing defendant (232 AD3d at 18-19).Critically, with the law's significant expansion in 2020 also came a mandatory entitlement to counsel fees for a prevailing defendant, whereas previously such an award was discretionary. The Court takes no issue with the Legislature's goal of broadening free speech protections and disincentivizing frivolous lawsuits that chill speech (see 2019 NY A.B. 5991 (NS), 2019 New York Assembly Bill No. 5991, New York Two Hundred Forty-Third Legislative Session).
Yet, it must be noted that the Bill Jacket indicates that the purpose of the amended law is to protect "citizens from frivolous litigation that is intended to silence their exercise of the rights of free speech and petition about matters of public interest." (NY Bill Jacket, 2020 A.B. 5991, Ch. 250 [emphasis added]). In fact, the New York State Bar Association Media Law Committee supported the bill, remarking that
"New Yorkers face unprecedented threats from those who want to silence people who present information that does not fit a specific narrative or viewpoint. Every time a powerful individual threatens a lawsuit, New Yorkers must put a literal price on their First Amendment rights. For such plaintiffs, spending hundreds of thousands of dollars to punish negative reporting or commentary is a mere line in a budget. Not so for the defendant."NYCLU, in supporting the Bill, similarly noted that "SLAPP plaintiffs almost always have greater resources than the defendants they harass and intimidate, and usually don't care how [*5]much they spend as long as it costs the defendant too much to win."
But, what of cases where the plaintiff is a minor and defendant is a major media company? Could an award of significant attorney fees be too harsh a penalty — even devastating - for some plaintiffs?
A recent opinion piece in the New York Law Journal raises serious questions about the amended Anti-SLAPP law (see Alan S. Lewis and Madelyn K. White, New York's Anti-SLAPP Act: An Unnecessary Chill on the First Amendment Right to Petition, NYLJ, Jan.13, 2026 at 3). The authors argue that the amended law has chilled plaintiffs' petition rights because "[s]uddenly, almost all defamation lawsuits— even those brought by individuals against large media conglomerates—fall within the anti-SLAPP Act's onerous grasp." They further assert that the "fee shifting called for under the anti-SLAPP Act is not merely remedial" and note that a "plaintiff, despite having a good faith belief in their cause of action, could be liable for hundreds of thousands of dollars if they are unable to come up with evidence of the defendant's state of mind prior to discovery." They worry that individual plaintiffs may routinely "not only suffer the dismissal of [their] lawsuit[s] but will also be ordered to pay the legal fees charged by the media company's expensive lawyers." And, they stress that "[f]or a smaller plaintiff, the potential ramifications of losing an anti-SLAPP Act motion to dismiss and thus being responsible for hundreds of thousands of dollars in legal fees could be truly existential."
Further, the authors note that by "attempting to 'level' the playing field to give all defendants an advantage, the New York anti-SLAPP Act has tilted the balance in favor of large institutional defendants as against private individuals" and, while intending to prevent frivolous lawsuits, has too greatly limited plaintiffs right to petition a court for redress.
These concerns are ones the Legislature should take up with this case serving as an exemplar. While the Legislature's desire to limit frivolous defamation claims made by the powerful against individual New Yorkers and members of the Fourth Estate may be just and admirable, the automatic award of counsel fees may also have gone too far, overpenalizing individual plaintiffs who bring non-frivolous and good faith claims but are ultimately unsuccessful. One solution to consider is restoring the Courts' discretion to award counsel fees in those appropriate cases and deny them in others in which courts determine the equities require no award. Perhaps the Legislature could provide factors, whether financial or otherwise, for courts to consider in such a determination. Ultimately, these are matters for another day and not in the authority of this Court to determine. 
Accordingly, it is
ORDERED, that NYP's motion to dismiss is granted and the action is dismissed as against NYP with prejudice; and it is further
ORDERED that the motion to dismiss the City's cross-claims against NYP is granted; and it is further
ORDERED that by March 4, 2026, NYP shall file a fee application (billing records and an affirmation of reasonableness) that set forth their fees in this action; by April 6, 2026, Plaintiff shall file any objections to the fee application; and Defendant NYP shall notify the court by email when these submissions are fully submitted.
This constitutes the Decision and Order of the Court.
DATE 2/4/2026ARIEL D. CHESLER, J.S.C.